[No. D056972. Fourth Dist., Div. One. Sept. 17, 2010.]

CENTER FOR BIOLOGICAL DIVERSITY et al., Plaintiffs and Appellants,
v.
COUNTY OF SAN BERNARDINO, Defendant;
HAWARDEN DEVELOPMENT COMPANY, Real Party in Interest and
Respondent.

604

## COUNSEL

Chatten-Brown & Carstens, Jan Chatten-Brown, Douglas P. Carstens, Michelle N. Black; and Adam Keats for Plaintiffs and Appellants.

Best Best & Krieger, Michelle Ouellette and Jason M. Ackerman for Real Party in Interest and Respondent.

## OPINION

McCONNELL, P. J.—Center for Biological Diversity, San Bernardino Valley Audubon Society, Save our Forest Association, and Sierra Club, plaintiffs in a CEQA (California Environmental Quality Act; Pub. Resources Code, § 21000 et seq.) action, appeal an order on attorney fees that was rendered on remand after an earlier appeal on the merits. The trial court originally awarded plaintiffs a reduced amount of fees under Code of Civil Procedure section 1021.5,[1] the private attorney general statute, based on their limited success at trial; they lost on two CEQA claims and won on one non-CEQA claim. On remand, plaintiffs moved for fees incurred on the appeal, and for supplemental fees incurred at the trial court level based on their greater success on appeal on the CEQA claims. The court determined it lacked jurisdiction to hear the supplemental fees matter because plaintiffs had dismissed their appeal of the postjudgment order on fees and the order was final. Plaintiffs persuasively contend the court's jurisdictional finding was in error. A motion for *supplemental* fees based on greater success on appeal does not challenge the original fee order and poses no jurisdictional impediment. Thus, we remand for consideration of supplemental fees.

Further, we agree with plaintiffs that the court abused its discretion with regard to the amount of the award of attorney fees for appellate work. Where

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

unrefuted evidence shows that qualified local counsel is unavailable, it is error to base the allowable lodestar hourly rate on local rates without regard to reasonable hourly rates charged by competent counsel outside the local legal market. Additionally, where the record affirmatively shows that the court reduced the number of allowable hours by more than half without taking into account fundamental differences between trial and appellate work, remand is necessary. Accordingly, we reverse the order and direct the court to hold further proceedings on attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

Hawarden Development Company (Hawarden), real party in interest, seeks to develop 39.8 acres of property near Lake Arrowhead, California, into a 57-unit residential subdivision called Blue Ridge at Lake Arrowhead. In August 2005 the County of San Bernardino (the County) certified an environmental impact report (EIR) for the project and approved the project, subject to Hawarden's satisfaction of certain conditions, including its completion of 610 feet of Cumberland Road, a segment that runs through or adjacent to the development, and contributing a pro rata share toward the future cost of extending the road from the development to Highway 18.

Plaintiffs are environmental groups that appealed the County's actions to its board of supervisors, which denied the appeal and approved the project. Plaintiffs then challenged the approval in superior court by filing a petition for writ of mandate. The trial court granted writ relief on one of three issues, finding the County's "fire safety plan requires that Cumberland Road be completed prior to development occurring and that the general plan is unambiguous as to this issue." This issue is not a CEQA issue and rather pertains to the County's general plan. The court rejected plaintiffs' CEQA challenges that substantial evidence did not support the EIR's findings pertaining to the project's impact on the Southern Rubber Boa, a threatened species found on the project site, and on water supply for the project. On January 3, 2007, the court issued a peremptory writ of mandate ordering the County to vacate and set aside its project approval.

The County and Hawarden appealed the judgment and plaintiffs cross-appealed. While the appeal was pending, plaintiffs moved for $191,729.05 in costs and attorney fees under section 1021.5. This amount included attorney fees of $98,615.35, an enhancement of $73,961.51 based on a multiplier of 1.75, costs of $4,352.19, and attorney fees of $14,800 for bringing the attorney fees motion (first fee motion). In its opposition, Hawarden argued the fee request should be "drastically reduced" because plaintiffs only "prevailed on one portion of their three causes of action," and "almost two-thirds of [plaintiffs'] brief was devoted to . . . one of the causes of action

on which [they] failed to prevail." Hawarden asked the court to disallow fees for time spent on CEQA issues.

After a hearing on May 23, 2007, the court issued a minute order granting plaintiffs a reduced award. The order states: "Due to the limited relief granted on the underlying petition and the fact that the court finds the claimed fees to be excessive, the fees are reduced. [Plaintiffs are] awarded $50,000.00 in attorney fees inclusive of all staff time, plus $1,000 in costs."

The court issued a formal order on June 21, 2007. The County and Hawarden appealed the order and plaintiffs cross-appealed. The parties entered into a stipulation to stay the appeal of the fee award pending resolution of the pending appeal of the judgment. Division Two of the Fourth Appellate District,[2] however, denied the parties' stipulation for a stay. The parties then entered into a stipulation to dismiss with prejudice their appeals of the attorney fees order.

In an unpublished opinion, Division Two of this District affirmed the judgment with respect to the appeal by the County and Hawarden. As to plaintiffs' appeal, the court held the trial court erred by denying their two CEQA claims. The court modified the judgment issuing the writ of mandate "to require [the] County to prepare an EIR that complies with CEQA in addressing the issues of water supply for the Blue Ridge project and the impact on the Southern Rubber Boa." (*Center for Biological Diversity, Inc. v. County of San Bernardino* (Oct. 27, 2008, E042316) [nonpub. opn.] (*Hawarden I*).)

On remand, the case was reassigned to a new trial judge per plaintiffs' peremptory challenge. Plaintiffs then moved for an additional fee award (second fee motion). In addition to seeking attorney fees for the appeal, they argued their greater success on appeal entitles them to a supplemental award for work performed at the trial court level. They pointed out that the County and Hawarden opposed their original fee request on the ground they achieved only partial success at trial, the court noted that reason for reducing the fee award, and the award of $50,000 was roughly a third of the augmented amount they requested for trial court work.

Plaintiffs sought a total of $563,926.45 in fees, including $136,230.45 for trial work; $180,324.65 for appellate work; an augment of $256,967.10 based on a multiplier of 2.0 for the contingent portion of the representation; and $40,405.25 for bringing the motion for fees. The request included an offset of $50,000 for the first fee award.

---

[2] The instant appeal (*Hawarden II*) was transferred to this court.

On July 2, 2009, after extensive briefing and a hearing, the court issued its ruling. The court determined it lacked jurisdiction to consider plaintiffs' request for supplemental fees for trial work because they had dismissed their appeal of the postjudgment order awarding $50,000 in fees and the order "has become final and cannot be altered."

For the appeal in *Hawarden I*, the court reduced the claimed fees to $62,530 on the ground they duplicated work done at the trial court level. Further, the court disallowed hourly rates of out-of-town counsel that exceeded local Inland Empire rates of $370, and it refused to apply a multiplier to the lodestar amount. The court allowed $10,000 in fees incurred in bringing the second fee motion.

## DISCUSSION

## I

### *Trial Court's Jurisdiction to Consider Motion for Supplemental Attorney Fees Under Section 1021.5*

"The question of the trial court's jurisdiction is a pure question of law subject to our independent review." (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 537 [66 Cal.Rptr.3d 175].)

■ Section 1021.5 codifies the private attorney general doctrine the Supreme Court adopted in *Serrano v. Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]. (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].) " ' "The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]" [Citation.] Entitlement to fees under section 1021.5 requires a showing that the litigation: "(1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) [was necessary and] imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter." [Citation.]' [Citation.] In short, section 1021.5 acts as an incentive for the pursuit of public interest-related litigation that might otherwise have been too

costly to bring." (*Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors* (2000) 79 Cal.App.4th 505, 511 [94 Cal.Rptr.2d 205].)[3]

■ "It is well settled that the private attorney general theory applies to an action to enforce provisions of CEQA." (*City of Carmel-by-the-Sea v. Board of Supervisors* (1986) 183 Cal.App.3d 229, 254 [227 Cal.Rptr. 899]; see *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738, 754 [202 Cal.Rptr. 423] ["litigation brought to enforce the provisions of CEQA . . . has been held to involve important rights affecting the public interest" for purposes of § 1021.5].)

■ The court has discretion to reduce attorney fees in a CEQA case based on the plaintiffs' degree of success. (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 428, fn. 29 [253 Cal.Rptr. 426, 764 P.2d 278]; *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 249 [261 Cal.Rptr. 520].) The California Supreme Court has also instructed, however, that attorney fee awards under section 1021.5 "should be fully compensatory," and absent "circumstances rendering the award unjust, an . . . award should ordinarily include compensation for *all* the hours *reasonably spent*." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133 [104 Cal.Rptr.2d 377, 17 P.3d 735]; see *Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 274 [237 Cal.Rptr. 269] ["Rather than adopt a rigid holding, we conceive it to be far more beneficial to leave it to the discretion of the trial court to determine whether time spent on an unsuccessful legal theory was reasonably incurred."].)

In support of their position, plaintiffs cite the following language from *McQueen v. Board of Directors* (1988) 202 Cal.App.3d 1136 [249 Cal.Rptr. 439] (*McQueen*), disapproved of on another ground in *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 570, footnote 2 [38 Cal.Rptr.2d 139, 888 P.2d 1268]: "Typically, where a CEQA petitioner has obtained greater relief on appeal than in the trial court, the appellate court has remanded the matter to the trial court for reconsideration of its ruling on a request for attorney fees pursuant to . . . section 1021.5." (*McQueen, supra*, at p. 1152, and cases cited therein.) In *McQueen*, the trial court denied the petitioner any meaningful relief on his CEQA claim, and based thereon denied his later motion for attorney fees in a statement of decision. The appellate court reversed the order on the merits and directed the trial court to

---

[3] Section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. . . ."

issue a writ of mandate and reconsider the petitioner's request for attorney fees based on his greater success on appeal. (*McQueen*, at p. 1152.)

Hawarden asserts *McQueen* is inapplicable because in that case there was a separate pending appeal on the attorney fees issue. In Hawarden's view, when there is a separately appealable postjudgment order on attorney fees, as here, on remand the trial court may not consider a request for supplemental fees based on greater success on appeal unless there is a pending appeal on the postjudgment order.

■ We disagree with Hawarden's analysis and conclude the court's jurisdictional finding was erroneous. Contrary to the court's concern, plaintiffs' request for supplemental attorney fees for trial work, based on a greater success at trial on the CEQA issues, does not challenge or potentially tamper with the final postjudgment order partially granting plaintiffs' first fee motion. In their motion for supplemental fees, plaintiffs clearly deducted the $50,000 originally awarded them. On remand from *Hawarden I*, plaintiffs' entitlement to supplemental fees was an open question the court was required to consider. Successful CEQA plaintiffs are entitled to attorney fees if they meet the criteria of section 1021.5, and here, plaintiffs were denied fees for CEQA work even though they ultimately succeeded on the issues. Plaintiffs were not required to appeal the postjudgment order on fees to seek supplemental fees after the appeal in *Hawarden I*, and thus their appeal of the order and subsequent dismissal of the appeal are immaterial.[4]

■ Hawarden's reliance on *Soldate v. Fidelity National Financial, Inc.* (1998) 62 Cal.App.4th 1069 [72 Cal.Rptr.2d 404], is misplaced. *Soldate* explains that "a subsequent posttrial order setting the amount of fees—itself an appealable order—is not reviewable on appeal, unless the posttrial order setting the fees is expressly specified in a notice of appeal." (*Id.* at p. 1073.) Here, the issue is not whether the original order on fees is subject to review on appeal. It is not. As discussed, however, plaintiffs' motion for supplemental fees based on a greater success on appeal does not affect the original order on fees. Hawarden's reliance on *Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156 [50 Cal.Rptr.3d 247], is misplaced for the same reason. The court's error requires reversal of the order and further proceedings on remand.

---

[4] We note that even when there is no appeal of a postjudgment order awarding attorney fees to the prevailing party, and the award has become final, the appellate court's *reversal* of the judgment on the merits extinguishes the order on fees. The successful party is never required to pay the unsuccessful party's costs. (*Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284 [114 Cal.Rptr.2d 898]; *California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 220 [27 Cal.Rptr.2d 396].)

## II

### *Amount of Award for* Hawarden I

Plaintiffs contend the court abused its discretion by limiting the hourly rates of their out-of-area attorneys to local market rates, and by drastically reducing the claimed hours. Given our reversal of the order on fees on the jurisdictional ground, we are not required to reach these issues. At the parties' joint request, however, we exercise our discretion to do so for purposes of judicial economy. (See *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 396 [33 Cal.Rptr.3d 644] (*Horsford*).) The market rate issue is also germane to the court's reconsideration on remand of plaintiffs' request for supplemental fees for their counsels' work at the trial court level.

### A

### *Market Rates*

#### 1

Plaintiffs contend the court abused its discretion by reducing the hourly rates of their out-of-area attorneys. Plaintiffs are represented by the Santa Monica law firm Chatten-Brown & Carstens.[5] Chatten-Brown & Carstens primarily represents environmental and community groups, and it generally accepts cases "based upon a reduced rate level negotiated with the clients, sometimes with a cap on fees, and sometimes on a fully contingent basis, except for payment of costs." The firm's representation here is largely on a contingent fee basis.

Plaintiffs sought hourly attorney rates of $370, $450, $475 and $625, depending on experience levels. The attorney seeking the $625 hourly rate is Jan Chatten-Brown, who has more than 35 years' experience in environmental matters. She was "listed in the Los Angeles magazine as a 2006 and 2007 Southern California Super Lawyer in the field of environmental law." The attorney principally responsible for the case, Douglas Carstens, seeks an hourly rate of $475. He was admitted to the California Bar in 1997 and he has an environmental law background.

Carstens submitted a declaration that states the "hourly rates are well within the range charged by other attorneys of comparable experience, as

---

[5] Plaintiffs are also represented by Adam Keats, a staff attorney with Center for Biological Diversity, a plaintiff here, which is located in San Francisco. Our discussion applies equally to him.

reflected in a survey by [T]he National Law Journal. A December 8, 2008 billing rate survey conducted by The National Law Journal shows that in the Los Angeles area where our offices are located, partner billing rates typically ranged between $448–$795, and associate billing rates typically ranged between $275–$455." A copy of the billing survey is attached to his declaration.

The Carstens declaration also states the requested hourly rates are similar to rates plaintiffs' attorneys have been awarded in past environmental cases. In a 2007 Sacramento County case, the court awarded Chatten-Brown $500 per hour and Carstens $375 per hour; in a 2008 San Mateo County case the court awarded Chatten-Brown $500 per hour and Carstens $400 per hour; in a 2008 Los Angeles County case the court awarded Chatten-Brown $550 per hour and Carstens $400 per hour; and in a 2008 case in Riverside County the court awarded Chatten-Brown $600 per hour and Carstens $450 per hour.[6] Carstens's declaration also states the "reasonableness of the rates requested is also established by the fact that in the past year, we have been retained and paid at our 2008 market rate of $600.00 per hour for . . . Chatten-Brown [and] $450.00 per hour for . . . Carstens."

The court limited hourly fees for all attorneys to $370. Its order states, "The court is familiar generally with the *local* prevailing rates and concludes the rate of $370.00 per hour is more in line for similar work in this community." (Italics added.)

2

Plaintiffs claim the court abused its discretion by applying local market rates because they presented undisputed evidence that qualified local representation that would accept reduced rates or a contingency arrangement was unavailable. We agree.

The "burden is on the party seeking attorney fees to prove that the fees it seeks are reasonable. [Citation.] It is also plaintiffs' burden on appeal to prove that the court abused its discretion in awarding fees." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 98 [100 Cal.Rptr.3d 152].) " 'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd

---

[6] Hawarden asserts the court would have been justified in not awarding plaintiffs *any* attorney fees as punishment for not revealing that in the Riverside County case the real party in interest did not oppose the fee request. The assertion is unmeritorious as plaintiffs submitted a copy of the ruling from that case which shows the motion for fees was unopposed. Further, although a fee motion is unopposed the court has discretion to grant reduced fees.

manner that resulted in a manifest miscarriage of justice." [Citation.]' " (*Polanski v. Superior Court* (2009) 180 Cal.App.4th 4th 507, 537 [102 Cal.Rptr.3d 696].) " 'The abuse of discretion standard is "deferential," but it "is not empty." [Citation.] "[I]t asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts [citations]." [Citation.]' " (*Ibid.*) When we are reviewing an award of attorney fees for appellate work, we need not accord the same degree of deference we would give to rulings that involve the trial court's firsthand knowledge. (*Perkins v. Standard Oil Co. of California* (9th Cir. 1973) 474 F.2d 549, 552.)[7] Further, when, as here, the fee order under review was rendered by a judge other than the trial judge, we may exercise " 'somewhat more latitude in determining whether there has been an abuse of discretion than would be true in the usual case.' " (*Perkins v. Standard Oil Co. of California, supra*, 474 F.2d at p. 552.)

■ "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' " (*PCLM Group, Ins. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511].) Generally, the reasonable hourly rate used for the lodestar calculation "is that prevailing in the community for similar work." (*Ibid.*; see *Ketchum v. Moses, supra*, 24 Cal.4th at p. 1132 ["the lodestar is the basic fee for comparable legal services in the community"].) After making the lodestar calculation, the court may augment or diminish that amount based on a number of factors specific to the case, including the novelty and difficulty of the issues, the attorneys' skill in presenting the issues, the extent to which the case precluded the attorneys from accepting other work, and the contingent nature of the work. (*Serrano v. Priest, supra*, 20 Cal.3d at p. 49.) "The purpose of such adjustment is to fix a fee at the fair market value for the particular action." (*Ketchum v. Moses, supra*, at p. 1132.)

■ In *Horsford, supra*, 132 Cal.App.4th 359, an action for employment discrimination brought under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), the court rejected the notion that fee awards are invariably limited to local rates, despite language in *Ketchum v. Moses, supra*, 24 Cal.4th at page 1132, that "the lodestar is the basic fee for comparable legal services in the community." (*Horsford, supra*, at p. 399.) The *Horsford* court explained: "[The Supreme Court] has never hinted that, in

---

[7] In *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1290 [240 Cal.Rptr. 872, 743 P.2d 932], the court explained that "[s]ince both this court and the Legislature have relied on federal cases in framing the private attorney general theory, we regard the federal precedent in this area as persuasive."

the unusual circumstances that local counsel is unavailable, the trial court is limited to the use of local hourly rates. The purpose of statutory attorney fee provisions is to provide financial incentives necessary for the private enforcement of important civil rights. [Citation.] If a potential defendant is too intimidating to the local bar or so replete with resources as to potentially overwhelm local counsel, or if the local plaintiffs' bar has not the resources to engage in complex litigation on a contingency-fee basis, the public interest in the prosecution of meritorious . . . cases requires that the financial incentives be adjusted to attract attorneys who are sufficient to the cause. *In the absence of any realistic indication plaintiffs could have found local counsel, it was an abuse of discretion to fail even to consider an hourly rate based on counsel's 'home' market rate.*" (*Ibid.*, italics added.)

■ In *Horsford*, the court held the trial court erred by "failing adequately to consider the propriety of a higher hourly rate for Murray, a San Francisco attorney, in order to accomplish the purposes of FEHA." (*Horsford, supra*, 132 Cal.App.4th at p. 397.) The plaintiff submitted "overwhelming and uncontradicted" evidence he had contacted several attorneys in the local Fresno area, but not one of them was willing to represent him. (*Id.* at p. 398.) The court explained the "method of achieving adequate compensation for out-of-town counsel, when reasonably necessary, rests within the trial court's discretion. If all lawyers for the prevailing party are from the high-fee area, the court might consider that factor in determining whether to award an enhancement multiplier to a lodestar initially calculated using local hourly rates. In cases like the present, where only some attorneys are from the high-fee area, the court should consider making the adjustment for the hourly rate of that attorney, rather than adjusting upward all of the fees through a multiplier, which might unjustly compensate local attorneys." (*Id.* at p. 399.)

■ In *Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233 [66 Cal.Rptr.3d 680] (*Nichols*), the court clarified that in *Horsford* it had concluded that because the plaintiff showed " ' "a good-faith effort to find local counsel" ' and 'demonstrate[d] . . . that hiring local counsel was impracticable,' the trial court should have considered the out-of-town counsel's higher rates, either in (1) calculating the initial lodestar figure *or* (2) evaluating whether to award a multiplier to a lodestar initially calculated using local hourly rates." (*Nichols, supra*, at p. 1243, quoting *Horsford, supra*, 132 Cal.App.4th at p. 399.)

In *Nichols*, the court held the trial court abused its discretion by applying a fee multiplier to compensate for the higher rates of out-of-town counsel when the plaintiff did not meet her burden of showing that hiring local counsel was impracticable. (*Nichols, supra*, 155 Cal.App.4th at pp. 1242, 1244.) The court noted "it is clear from plaintiff's declaration that, although she had concerns that she would be unable to find adequate representation, no effort was made

to retain local counsel. Despite the fact that plaintiff failed to make an adequate threshold showing, the trial court proceeded to impose a fee multiplier on the out-of-town attorneys' higher rates. [¶] . . . Use of a fee multiplier to compensate for the higher rates of out-of-town counsel requires a sufficient showing—which plaintiff failed to make in this case—that hiring local counsel was impracticable." (*Id.* at p. 1244.)

Here, plaintiffs' request for home market rates for their attorneys is based on the declaration of Peter Jorris, a member of the San Bernardino Valley Audubon Society, one of the plaintiffs in this case, which he made on personal knowledge of the facts. The declaration states: "For the past 14 years, since 1993, I have been actively involved in environmental and conservation issues in the San Bernardino Mountains, participating with many citizen organizations. . . . [¶] . . . I am familiar with the local San Bernardino attorney market. In the past I have been aware of a couple attorneys who have represented environmental petitioners in the area, but are either not currently active in the area or, based upon our experience, do not possess appropriate expertise to adequately represent the interests of petitioners involved in this litigation."

The declaration adds that prior to undertaking this case, the San Bernardino Valley Audubon Society was represented by Chatten-Brown & Carstens in another CEQA case against the County of San Bernardino. The declaration closes by stating, "As far as I know, there are no local attorneys in San Bernardino County that regularly practice environmental law on behalf of environmental groups, will do such work on a contingent or reduced rate basis, and possess sufficient expertise available to represent Audubon or the other petitioners in this litigation. In short, we were required to obtain counsel from out of the area because equivalent local counsel was not available."

Hawarden asserts the Jorris declaration is merely conclusory and thus it was of no assistance to the trial court.[8] A plaintiff's threshold showing of impracticability, however, is not onerous (*Horsford, supra*, 132 Cal.App.4th at p. 399), and the Jorris declaration is sufficient and competent evidence that plaintiffs acted in good faith and hiring qualified counsel in the San Bernardino area was impracticable. Jorris has been involved in local environmental issues

---

[8] In their first fee motion, plaintiffs neglected to submit any evidence with their moving brief of any good faith effort to retain local counsel. After receiving Hawarden's opposition, plaintiffs submitted the Jorris declaration. Hawarden objected to the declaration on the ground of waiver since it was not submitted with plaintiffs' moving papers. In its second fee motion, plaintiffs did not submit a copy of the declaration or Hawarden's objection to it. With its opposition, however, Hawarden supplied those documents to the court. The parties do not cite the record to show any ruling on Hawarden's objection. In any event, on appeal Hawarden does not argue the declaration is inadmissible because of untimeliness.

for many years, and he has participated in local litigation as a member of a local environmental group, and he can vouch for the unavailability of qualified local counsel. Under these particular circumstances, plaintiffs were not required to produce more detailed evidence, such as evidence of contacts to numerous attorneys who refused the case. Through his experience, Jorris was well aware of the local market. Notably, Hawarden vigorously opposed plaintiffs' second fee motion, but it adduced no evidence suggesting qualified local counsel was available.[9]

As the only evidence on the issue of availability of local counsel showed plaintiffs' need to retain out-of-area counsel, the court abused its discretion by applying local market rates rather than counsel's home market rates. (See *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 155–156 [50 Cal.Rptr.3d 273].) We direct the court on remand to hold further proceedings to determine the reasonable home market rate to which plaintiffs' attorneys are entitled, both for the appeal in *Hawarden I* and for supplemental fees for trial work based on plaintiffs' greater success on appeal on the CEQA issues.

3

Hawarden asserts we must affirm the court's reduction of hourly rates to $370 because even if Chatten-Brown & Carstens is entitled to home market rates, its actual home market rates are significantly less than the rates it seeks in this case. Hawarden submitted evidence showing the firm entered into two contracts, in 2008 and 2009, respectively, to represent municipalities in environmental matters at rates capped at $375.

The contracts, however, do not necessarily rebut plaintiffs' evidence on home market rates and, standing alone, do not justify the court's reduction in rates. It is undisputed that Chatten-Brown & Carstens commonly accepts reduced rates from clients. Here, for instance, the firm accepts reduced rates from plaintiffs, which does not affect its right to seek reasonable market rates under section 1021.5. " 'The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. [Citations.] This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel. [Citations.]' " (*Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1260 [105 Cal.Rptr.3d 214]; see *MBNA America Bank, N.A. v. Gorman* (2006) 147 Cal.App.4th Supp. 1, 13

---

[9] Plaintiffs also presented evidence that the partner billing rate they were requesting for Carstens was comparable to that which Hawarden's counsel charges for legal services. Hawarden did not challenge this evidence.

[54 Cal.Rptr.3d 724].) In *Chacon v. Litke, supra,* at page 1260, the court rejected the argument that an hourly fee was excessive because it exceeded the amount stated in a fee agreement.

B

*Number of Claimed Hours*

Additionally, plaintiffs complain that the court drastically and unjustifiably reduced the number of their claimed hours for appellate work in *Hawarden I.* Plaintiffs requested compensation based on 385 hours of time. With a minor exception of 4.7 hours for a paralegal, all hours were for five attorneys. The court found the hours "to be clearly excessive." The court allowed 169 hours for three of the attorneys. Plaintiffs sought 42.8 hours for Chatten-Brown, and the court awarded 21 hours; they sought 259.7 hours for Carstens, and the court awarded 129 hours; and they sought 38.9 hours for Keats, and the court awarded 19 hours. The court disallowed altogether the time of two attorneys and the paralegal.

The court explained as follows: "[T]his case was already fully litigated in the trial court. All the work up associated with this was done. The [a]dministrative [r]ecord was prepared, reviewed and analyzed. CEQA issues were identified. Significant legal research and analysis was conducted. Significant time and work was committed to the preparation of the petition and briefs including references to the administrative record. The matter was argued to the trial court and an ultimate disposition obtained. Petitioners prevailed on several of the claims and addressed the unsuccessful claims during appeal. [¶] It thus appears to the court that the majority of the hard ground work was done in the trial court and that it would be unnecessary to expend significant hours re-plowing the same field for purposes of appeal."[10]

█ Plaintiffs assert the court's ruling constitutes abuse of discretion because it "dramatically undervalues the type and quantity of work normally done during the appellate process." We agree that by reducing claimed hours by approximately 56 percent under the guise of duplication the court exercised its discretion in an arbitrary manner. While the administrative record was prepared for trial court proceedings, there is no indication that the appellate work of plaintiffs' counsel included any duplicative fees related to the administrative record. Further, trial court preparation and appellate work are not commensurate tasks. As Hawarden's counsel acknowledged at oral argument, preparation of an appellate brief and record is far more complicated than merely "repackaging" the trial court brief.

---

[10] Hawarden claims the court "thought the . . . [claimed] hours were in fact padded." The court's order says no such thing.

In *In re Marriage of Shaban* (2001) 88 Cal.App.4th 398 [105 Cal.Rptr.2d 863] (*Shaban*), the court rejected the notion that a fee award "was excessive because 'most of the work that would have to be done by appellate counsel on appeal had already been done in connection with the trial.' " (*Id.* at p. 408.) The court explained: "Appellate work is most assuredly not the recycling of trial level points and authorities. Of course, the orientation of trial work and appellate work is obviously different [citation], but that is only the beginning of the differences that come immediately to mind. [¶] For better or worse, appellate briefs receive greater judicial scrutiny than trial level points and authorities, because three judges (or maybe seven) will read them, not just one judge. The judges will also work under comparatively less time pressure, and will therefore be able to study the attorney's 'work product' more closely. They will also have more staff (there are fewer research attorneys per judge at the trial level) to help them identify errors in counsel's reasoning, misstatements of law and miscitations of authority, and to do original research to uncover ideas and authorities that counsel may have missed, or decided not to bring to the court's attention." (*Id.* at pp. 408–409.)

The *Shaban* court further explained: "Then there is the simple matter of page limitations. Appellate courts are more liberal than trial courts as to the number of pages counsel are allowed. [Citations.] Granted, the extra length of the 'briefs' in appellate and reviewing courts is not always a good thing [citation], but the difference does mean that appellate counsel will have much more freedom to explore the contours and implications of the respective legal positions of the parties. Part of that exploration may mean additional research that trial counsel simply will not have had the time to do. [¶] Finally, because the orientation in appellate courts is on whether the trial court committed prejudicial error of law, the appellate practitioner is on occasion likely to stumble into areas implicating some of the great ideas of jurisprudence, with the concomitant need for additional research and analysis that takes a broader view of the relevant legal authorities." (*Shaban, supra*, 88 Cal.App.4th at pp. 410–409.)

"The upshot of these considerations is that appellate practice entails rigorous original work in its own right. The appellate practitioner who takes trial level points and authorities and, without reconsideration or additional research, merely shovels them in to an appellate brief, is producing a substandard product. Rather than being a rehash of trial level points and authorities, the appellate brief offers counsel probably their best opportunity to craft work of original, professional, and, on occasion, literary value." (*Shaban, supra*, 88 Cal.App.4th at p. 410, fn. omitted; see also *Sebago, Inc. v. City of Alameda* (1989) 211 Cal.App.3d 1372, 1387–1388 [259 Cal.Rptr.

918]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2009) ¶ 9:30, pp. 9-9 to 9-10 (rev. # 1, 2009).)[11]

Given the nature of appellate work, we disagree with the court's assessment that "the majority of the hard ground work was done in the trial court and it would be unnecessary to expend significant hours re-plowing the same field for purposes of appeal." Further, counsel's expenditure of more time on appeal than at trial (385 hours versus approximately 302 hours) does not necessarily indicate duplication. Plaintiffs lost at trial on two out of three issues; they had no success at all on CEQA issues. It was plaintiffs' burden on appeal to demonstrate error, and the efforts of their attorneys were fruitful. Further, while pursuing their own appeal, plaintiffs were required to defend against Hawarden's and the County's appeal of the non-CEQA issue on which they prevailed at trial. Notably, Carstens's declaration reveals that his clients had concluded they would not appeal the CEQA issues unless the County or Hawarden appealed the general plan issue.

 Moreover, there is naturally going to be duplication attributable to the time lag between trial and appeal. As a federal court noted in an analogous context: "[D]etermining whether work is unnecessarily duplicative is no easy task. When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigation over time. . . . One certainly expects *some* degree of duplication as an inherent part of the process. There is no reason why the lawyer should perform this necessary work for free." (*Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, 1112.) "It is only where the lawyer does *unnecessarily* duplicative work that the court may legitimately cut the hours." (*Id.* at p. 1113.) Here, the trial court accepted Hawarden's assertion that trial and appellate work are largely duplicative without evaluating the specifics of this case or taking into account differences between appellate and trial court work.

Upon the trial court's reconsideration, a reduction of some of the claimed hours for the appeal in *Hawarden I* may be justified on the ground of duplication. However, we cannot sustain the cut of approximately 56 percent of the hours when the ruling indicates on its face that it was based on the court's erroneous belief appellate work is principally a rehash of trial work. In our view, "[i]t does not appear . . . that the trial court undertook its review of the fee issue with a focus on providing an award of attorney fees

---

[11] Here, plaintiffs' counsel prepared approximately 134 pages of appellate briefing in contrast to only 35 pages of briefing at trial.

reasonably designed to fully compensate plaintiffs' attorneys for the services provided." (*Horsford, supra,* 132 Cal.App.4th at p. 395.) We direct the court on remand to reconsider the number of claimed hours.

## C

### *Multiplier*

Additionally, plaintiffs assert the court abused its discretion by not applying a multiplier to the lodestar amount based on the contingent risk factor. (See *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1217–1218 [78 Cal.Rptr.3d 572].) "[T]he purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases as a class." (*Ketchum v. Moses, supra,* 24 Cal.4th at p. 1138.) "An enhancement of the lodestar amount to reflect the contingency risk is '[o]ne of the most common fee enhancers . . . .' " (*Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1399 [84 Cal.Rptr.3d 754].)

Given our disapproval of the lodestar amount, however, we decline to decide the multiplier issue. On remand, the trial court is required to readjust the lodestar amount, and then consider whether that amount should be enhanced. In other words, the propriety of a multiplier based on contingent risk and the amount of the multiplier are open questions entrusted to the court's sound discretion. (*Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 899 [111 Cal.Rptr.3d 374].)

We note that at oral argument, plaintiffs conceded that when out-of-area rates are awarded in the lodestar figure, a multiplier also based on out-of-area attorney rates would be improper. (*Horsford, supra,* 132 Cal.App.4th at p. 395 [court may award out-of-area rates *either* in the lodestar calculation *or* through use of multiplier].) As a general matter, factors used in arriving at the lodestar figure, such as the quality of representation, level of difficulty, complexity and experience level, should not be used in a multiplier to enhance the award. "Otherwise, the fee award will result in unfair double counting and be unreasonable." (*Ketchum v. Moses, supra,* 24 Cal.4th at p. 1139.) In *Ketchum,* the court explained: "We emphasize that when determining the appropriate enhancement, a trial court should not consider [enhancement] factors to the extent they are already encompassed within the lodestar." (*Id.* at pp. 1138–1139.)

## III

*Attorney Fees for* Hawarden II *Appeal*

Plaintiffs seek attorney fees incurred in the current appeal. As the prevailing parties on appeal, they are entitled to fees under section 1021.5. "Although this court has the power to fix attorney fees on appeal, the better practice is to have the trial court determine such fees . . . ." (*Security Pacific National Bank v. Adamo* (1983) 142 Cal.App.3d 492, 498 [191 Cal.Rptr. 134].)

## DISPOSITION

The order is reversed. The trial court is directed to hold further proceedings on attorney fees in accordance with this opinion, and for its determination of the amount of an award to plaintiffs for *Hawarden II*. Plaintiffs are also entitled to costs on appeal.

Haller, J., and Irion, J., concurred.

A petition for a rehearing was denied October 5, 2010, and on October 18, 2010, the opinion was modified to read as printed above.