Filed 9/20/23  Friends of Muir Woods Park v. County of Marin CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| FRIENDS OF MUIR WOODS PARK, et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> THE COUNTY OF MARIN, et al., <br><br>     Defendants and Respondents, <br><br> DANIEL WEISSMAN, <br><br>     Real Party in Interest and Respondent. | A166427 <br><br><br> (Marin County <br> Super. Ct. No. CIV2003248) |

Friends of Muir Woods Park and Watershed Alliance of Marin (collectively, appellants) appeal from an order awarding them substantially reduced attorney fees in a case arising under the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.).  They contend that the trial court abused its discretion by awarding them only a fraction of their $225,683 request.  Finding no error, we affirm.

### BACKGROUND

### A.

Real party in interest Daniel Weissman owns an eight-acre residential parcel in Mill Valley, which he seeks to subdivide into three parcels—one for his existing residence and the remaining

1

two for new homes (the project). In 2020, the County of Marin conducted an initial study, adopted a mitigated negative declaration, and approved Weissman's tentative subdivision map.

Friends of Muir Woods Park, an association of individuals who reside in the vicinity of Weissman's property, and Watershed Alliance of Marin filed a petition for writ of mandate alleging that the county violated CEQA and the Subdivision Map Act (Gov. Code, § 66410 et seq.; the Map Act). Appellants alleged that the project's grading and construction would result in significant environmental impacts, including increased sediment and polluted runoff in Redwood Creek, which is habitat for endangered Coho and Steelhead salmon. The prayer for relief asked the court to issue a writ compelling the county to set aside its project and mitigated negative declaration approvals and to issue an injunction suspending all project activities.

In their opening brief in support of their petition, appellants argued, primarily, that the county violated CEQA by approving the subdivision without requiring an EIR. In support of that argument, appellants asserted: (1) the county's initial study was inadequate because it only addressed the impacts of two new homes instead of the combined impacts from 12 homes that potentially could be built on the sites; (2) the project description in the initial study failed to provide crucial information about soil excavation and fill; (3) the initial study failed to accurately describe the existing environment, including soil stability around an existing fire road, hydrology, landslides, the streambed and riparian corridor, location of wetlands, and terrestrial and avian wildlife corridors; (4) the initial study failed to provide substantial evidence for its conclusions regarding impacts to human safety as well as geological, hydrological, and biological resources; (5) the initial study did not properly consider cumulative impacts because it failed to consider prior grading

and other recently proposed residential projects; and (6) the county failed to assess the project's consistency with local plans.

Appellants also maintained that the county's approval of the subdivision violated the Map Act because the project was inconsistent with the general plan and various community plan policies.

**B.**

After a hearing, the trial court entered an order granting appellants' petition in part and denying it in part. The court ruled that the county had not violated the Map Act. While it rejected most of appellants' CEQA arguments, it determined that the initial study omitted certain information.

The trial court explained that the initial study failed to satisfy CEQA's "informational requirements" with respect to three discrete issues—the description of the project as it pertains to the location of surplus fill; the current condition of soil stability around a fire road; and the location of drainages on the project site in relation to stream or wetland conservation areas, any mechanisms to be employed to divert water away from these areas, and associated environmental impacts. The court specifically rejected appellants' arguments that the county should have required an EIR; the court found no substantial evidence of potentially significant environmental impacts. The court also disagreed with appellants' argument that the county was obligated to analyze the impacts of a much larger project—12 potential new homes, rather than two.

The court's peremptory writ ordered the county to set aside its resolution adopting the mitigated negative declaration and its project approval. The county must "take further action as necessary to comply with CEQA and the [CEQA] Guidelines, specifically Section 15063, with respect to the . . . three specific areas." The writ made clear that the court was not directing the

3

county to exercise its discretion in any way and was not directing it to prepare an EIR.

## C.

Appellants moved for an award of attorney fees, pursuant to Code of Civil Procedure section 1021.5,[1] arguing that their lawsuit—by purportedly protecting salmon habitat in Redwood Creek—provided important public benefits. The lodestar amount appellants initially requested (in their moving papers) included 272.4 hours that appellants' lead attorney Edward Yates billed at an hourly rate of $500 (for a total of $136,200) on the underlying merits; 27.4 hours that Yates billed at the same rate (for a total of $13,700) in connection with preparing the motion for fees; 12.6 hours that a second attorney, David Eisenmann, incurred at an hourly rate of $400 (for a total of $5,040) on the underlying action; and 6.8 hours that Eisenmann billed at the same rate (for a total of $2,720) in connection with the fees motion.

Additionally, appellants added to their requested lodestar $39,889 that purportedly represents billings from another firm, the Evans Law Firm, plus a proposed multiplier of 1.5, for a total of $59,883.[2] However, appellants submitted no evidence to support these fees, much less evidence that any fees were incurred on a contingent basis. Appellants further noted that Yates discounted his fees by over $40,000 to eliminate billing for administrative work, as well as the Map Act and related plan consistency claims that were denied.

In his opposition brief, Weissman argued that appellants failed to satisfy the requirements for a fee award under section

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] In this instance and several others, we note that appellants presented the trial court with numbers that either do not align (between their briefs and declarations) or that appear to result from mathematical errors.

4

1021.5 and, in the alternative, argued that any fee award should be substantially reduced. On the latter point, Weissman did not challenge the requested hourly rates but argued that appellants' fee claim should be reduced by 90 percent to reflect that the time expended was excessive given appellants' limited success. He asserted that application of a negative multiplier (reducing the requested award by 80 to 90 percent) would account for the fact that appellants did not achieve their primary CEQA goal—the preparation of an EIR that analyzes the impacts on salmon and other natural resources of developing 12 homes at the site.

In their reply brief, appellants argued that no reduction for limited success was appropriate because they had obtained all the relief they sought. They also requested an additional award of fees for preparing the fees motion. As stated in Yates's supplemental declaration, Yates claimed 14.8 hours that he billed at a $500 hourly rate (for a total of $7,400) in connection with preparing the reply in support of appellants' fee motion. Appellants also claimed an additional 2.2 hours billed by Eisenmann, at $400 per hour, in connection with preparing the reply—for a total of $880. This brought appellants' total lodestar request to $225,683.

The trial court granted appellants' fee motion in part. The trial court found that appellants were "successful parties" and satisfied the remaining requirements for a section 1021.5 fee award. However, the trial court reduced appellants' total fee award to $37,346.30—comprised of $16,420 for the fees motion plus $20,926.30. The latter number represented 10 percent of appellants' merits lodestar and reply fees.

The trial court explained that reduced fees were appropriate because appellants achieved only limited success. The court noted that it had rejected appellants' main arguments—that the county was required to analyze a much larger development (12 potential units, rather than two) in a full

EIR.  Rather, the court identified only limited and discrete problems with the initial study, which may not require mitigation or any changes to the project and which the county could potentially address through the inclusion of targeted additional information.

The trial court also indicated that it was reducing fees because the amount requested was excessive, citing numerous hours incurred in connection with a motion for relief from dismissal (§ 473, subd. (b)) and a motion for leave to amend— neither of which was related to the merits of appellants' petition. Finally, the trial court concluded that appellants' attorneys were not entitled to a positive multiplier, noting that the "administrative record was not unusually voluminous and none of the issues was particularly difficult or complicated."

## DISCUSSION

### A.

Appellants insist that the trial court abused its discretion by substantially reducing the fee award.  We disagree.

### 1.

"[S]ection 1021.5 authorizes an award of attorney fees to a 'private attorney general,' that is, a party who secures a significant benefit for many people by enforcing an important right affecting the public interest."  (*Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1020.)  The intent of the statute is to encourage private actions enforcing important public policies—which would otherwise "frequently be infeasible"—by compensating successful litigants with attorney fees.[3]  (*Woodland Hills Residents Assn., Inc. v. City Council*

[3] The Sierra Club and the California Native Plant Society filed an amicus brief, in which they argue that affirming the trial

6

(1979) 23 Cal.3d 917, 933; *Children & Families Com. of Fresno County v. Brown* (2014) 228 Cal.App.4th 45, 55.)

" 'Attorney fees are recoverable under section 1021.5 (1) by a successful party, (2) in an action that has resulted in the enforcement of an important right affecting the public interest, (3) if a significant benefit has been conferred on the general public or a large class of persons, and (4) the necessity and financial burden of private enforcement are such as to make the award appropriate.' " (*Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1343.)

To calculate a fee award, a trial court must first determine the lodestar—the number of hours reasonably expended, multiplied by the reasonable hourly rate. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) The court may then adjust the lodestar, based on various factors including the contingent nature of any fee recovery, to fix the fee at the fair market value for the legal services provided. (*Ibid.*)

We review the amount of fees awarded for abuse of discretion, mindful of the fact that the trial judge is in the best position to assess the value of an attorney's performance. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).) It is the appellant's burden to prove that the trial court abused its discretion. (*Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1184 (*SOURCE*).)

Reversal is appropriate when there is no reasonable basis for the ruling, the trial court's necessary findings are not supported by substantial evidence, or when the court applied the wrong test or standards. (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239; *Blickman Turkus, LP v. MF Downtown*

court's award would conflict with the legislative purpose of section 1021.5 and discourage CEQA enforcement actions.

7

*Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894.)  Unless an appellant demonstrates otherwise, we assume the trial court followed the law, considered the relevant factors, and acted within its discretion.  (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 378; *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67 (*Gorman*).)  However, an "inscrutable" award—one that lacks any apparent reasonable basis—will be deemed arbitrary.  (*Gorman, supra,* at p. 101.)

**2.**

Appellants argue that, in reducing their fee award, the trial court could not consider their limited success because the court had already concluded that appellants were "successful" for purposes of entitlement to an attorney fee award.[4]  They are wrong.

True, the general rule is that attorney fee awards "should be fully compensatory" for all the hours reasonably spent.  (*Ketchum, supra*, 24 Cal.4th at p. 1133.)  But this comes with important caveats: courts may reduce or even deny fee requests when circumstances render the award unjust (*ibid.*), such as when the request appears unreasonably inflated (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 990) or when the party achieved only limited success.  (See, e.g., *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 428, fn. 29 [directing court of appeal to consider CEQA petitioner's lack of success on mitigation issue when awarding fees]; *SOURCE, supra,* 235 Cal.App.4th at p. 1185 ["the extent of a party's success is a key factor in determining the

---

[4] On appeal, respondents do not challenge the trial court's ruling that appellants are entitled to a fee award under section 1021.5.  Accordingly, we need not address appellants' arguments on that point.

reasonable amount of attorney fees to be awarded under section 1021.5"].)

Even where a plaintiff's successful and unsuccessful CEQA claims are interrelated (as we assume they are here) a trial court may reduce attorney fees if the plaintiff achieves only minimal success. (*SOURCE, supra,* 235 Cal.App.4th at pp. 1185-1186; *Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 238-239, 247-248 (*EPIC*); *Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 612.) This Division has previously made clear that a trial court " 'may appropriately reduce the lodestar calculation "if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." ' " (*EPIC, supra*, at p. 239.)

In short, the trial court did not apply an incorrect legal standard. A party's limited success is a legitimate consideration.

**3.**

Nor can we agree with appellants that, by failing to explicitly state the lodestar or make specific findings regarding the reasonableness of appellants' claimed rates and hours, the trial court erroneously skipped over the first step of the required lodestar analysis.

Our Supreme Court acknowledges the discretion of the trial court in setting attorney fees but has held that the exercise of that discretion must be grounded in the "lodestar adjustment method" to arrive at an objectively reasonable amount. (*Press v. Lucky Stores, Inc*. (1983) 34 Cal.3d 311, 322-324.) The first stage of the lodestar analysis sets a basic fee for comparable legal services in the community. At the next step, the trial court must determine whether the litigation before it involved case-specific factors that justify augmentation or reduction of the lodestar "to approximate the fair market rate for such services." (*Ketchum,*

9

*supra*, 24 Cal.4th at p. 1132.)  In setting that fair market value, trial courts may consider various factors, including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." (*Ibid*.)  But the award may not be upheld if no reasonable connection can be found between the lodestar figure and the fee ultimately awarded.  (*Press, supra,* at p. 324.)

Here, the trial court explicitly found appellants' attorneys billed at reasonable rates, but it did not make findings on the number of hours reasonably spent.  The absence of such findings is not a basis for reversal, however, because the court was not required to issue a statement of decision or otherwise explain its rationale.  (*Ketchum, supra,* 24 Cal.4th at p. 1140.)  We "cannot reverse an attorney fee award solely for lack of an explanation by the trial court.  We can reverse only if the record contains some indication that the trial court considered improper factors or . . . simply snatch[ed] its award 'from thin air.' " (*SOURCE, supra,* 235 Cal.App.4th at pp. 1189-1190; accord, *Gorman, supra,* 178 Cal.App.4th at p. 101.)

The record does not support appellants' claim that the trial court snatched a number out of thin air.  Because neither the county nor Weissman objected to counsel's hourly rates as unreasonable and it was "impossible to tell from counsel's timesheets how much time was spent on each of the numerous CEQA arguments," the trial court grounded its award in appellants' lodestar request ($225,683).  The court then deducted the fees incurred in preparing appellants' motion for fees ($16,420) and applied a negative multiplier to the remainder— explaining that "10% number is the Court's estimate as to the percentage of the action on which [appellants] prevailed."  The trial court also noted that the hours spent by appellants' counsel

on certain tasks—a motion for relief from dismissal (§ 473, subd. (b)) and a motion for leave to amend—were excessive. Accordingly, the trial court awarded a total fee award of $37,346.30—representing the sum of $16,420 plus $20,926.30 (10 percent of $209,263 [$225,683 minus $16,420]).

We read the court's fee order not as a "guess" at reasonable fees, as appellants theorize, but as an implicit determination that a negative multiplier should be applied—to all fees other than those incurred in connection with preparing the moving papers for the fee motion itself. The trial court's award is not inscrutable because it supported its decision by indicating that full compensation would be unjust in the circumstances, given appellants' limited success, and that the overall time spent was excessive for a relatively simple CEQA case.

Additionally, the trial court did not err in applying a negative multiplier, rather than deducting specific hours. If a trial court awards less fees than requested, it is "not required to specify each and every claimed item found to be unsupported or unreasonable." (*Gorman, supra,* 178 Cal.App.4th at p. 67.) A court may use a negative multiplier when "some identified, legally justifiable circumstance" supports its decision to diverge from the lodestar. (*Rogel v. Lynwood Redevelopment Agency* (2011) 194 Cal.App.4th 1319, 1329-1330; *San Diego Police Officers Assn. v. San Diego Police Department* (1999) 76 Cal.App.4th 19, 24 .)

In *SOURCE, supra,* 235 Cal.App.4th 1179, the Fourth District Court of Appeal affirmed the use of a substantial negative multiplier (approximately 16 percent) where the record demonstrated the plaintiffs' attorneys inflated their billing in an uncomplicated CEQA case and succeeded on only one out of 10 of their arguments. (*Id.* at pp. 1182-1187, 1189-1190.) The reviewing court explained: "[A]lthough the court did not state the lodestar amount or explain how it arrived at the amount

11

awarded, it did make it clear that it intended to substantially reduce the fees based on what it saw as outrageous overbilling.  It stated its opinion that the case was not complicated by CEQA standards and could be handled by experienced CEQA attorneys 'without having to reinvent the wheel,' thus indicating a belief that the billing was exaggerated.  It also stated that it was basing its fee reduction on [the plaintiffs'] limited success in the litigation. . . . [T]hese are all legitimate reasons for reducing a fee award. Because the record shows that the court acted for legitimate reasons, we cannot find an abuse of discretion simply because it failed to make its arithmetic transparent."  (*Id*. at p. 1190.)

Here too, the record amply supports the trial court's application of a negative multiplier.  The trial court concluded that appellants achieved only limited success.  The court focused on the fact that appellants "argued the County should have required an EIR, and in particular an EIR based on a theory that would have required extensive environmental review based on 12 potential units on the property rather than two additional units."  Essentially, the court concluded that appellants (unsuccessfully) tried to make the case much bigger than it was.

Appellants say they achieved all their goals, and they never sought an *order* requiring the county to prepare an EIR.  Generally, when issuing a writ for a violation of CEQA, a court cannot order a lead agency to exercise its discretion in a particular manner (see Pub. Resources Code, § 21168.9, subd. (c)) although there are circumstances in which a court may direct an agency to prepare an EIR.  (See, e.g., *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1122 [courts may order preparation of an EIR if, considering the circumstances, public agency lacks discretion to apply an exemption or issue a negative declaration].)  But this is beside the point.

12

Appellants argued strenuously that the county violated CEQA by failing to prepare an EIR, that the standard for triggering an EIR (the so-called fair argument standard) was met (Pub. Resources Code, § 21151; *Sierra Club v. County of Sonoma* (1992) 6 Cal.App.4th 1307, 1316), and that the county improperly restricted its analysis to a much smaller project (two homes rather than 12). Had appellants prevailed, the county probably would have to prepare an EIR to comply with the writ. But the court rejected these arguments and required the county only to correct discrete omissions in the initial study. Overall, the record supports the trial court's view that the plaintiffs achieved far less than they sought. It was entitled to reduce the fee award accordingly. (See *EPIC, supra*, 190 Cal.App.4th at pp. 238-239, 247-248.)

**B.**

Appellants also contend that the trial court impermissibly "disallowed" fees incurred in connection with the filing of their reply brief (on the fee motion) as well as those incurred for certain "indispensable tasks"—such as preparing the administrative record and litigating a motion for relief from dismissal. We need only briefly address these arguments because appellants mischaracterize the record.

The trial court did *not* award zero fees for the reply brief. To the contrary, although the trial court made clear that it was not applying the negative 0.1 multiplier to appellants' requested lodestar for their *moving* papers on the fees motion, it included the reply fees in the lodestar against which the negative multiplier was applied. The trial court did not explain why it awarded full fees for the moving paper fees and only 10 percent of what was requested for the reply, but we can infer that the trial court viewed approximately $25,000 in total fees for an attorney's fees motion as excessive in this case. (See *Gorman, supra*, 178 Cal.App.4th at p. 101 [attorney fee award cannot be reversed due

13

to absence of explanation if it can be rationalized in light of record]; *SOURCE, supra,* 235 Cal.App.4th at p. 1186 ["to charge nearly $10,000 for a run-of-the-mill attorney fees motion can reasonably be viewed as excessive"].)

Similarly, the court did not deny all fees for preparing the administrative record and for filing a motion pursuant to section 473. Again, the trial court applied a negative multiplier to the lodestar, which included all of appellants' requested fees for such tasks. The trial court apparently believed that the time spent on these tasks was excessive or inflated.

That implicit finding is supported. Appellants requested $59,883 (representing 121.2 attorney, paralegal, and law clerk hours enhanced by a positive multiplier of 1.5) for work assigned to the Evans Law Firm. The *only* evidence in the record supporting these fees is found in Yates's declaration, which states that he assigned the following work to the Evans Law Firm: "Research and draft Motion and Points and Authorities for Relief under Section 473, Points and Authorities for Motion to Amend the Petition to Add Sierra Club as a Party; editing of Opening Brief and oversight of law clerk preparation of Administrative Record; filing proofs of service. Both firms attended hearings and settlement and case management conferences."

On this record, appellants have not met their burden of proving that the hours expended and fees sought for such tasks were reasonable (*Center for Biological Diversity v. County of San Bernardino, supra,* 188 Cal.App.4th at p. 615) or that the trial court abused its discretion by reducing them. (*SOURCE, supra,* 235 Cal.App.4th at p. 1184.)

## C.

Finally, appellants contend that the trial court abused its discretion by declining to apply a positive lodestar multiplier to the Evans Law Firm's lodestar. We need not address appellant's

14

argument because appellants do not cite any evidence in the record supporting their argument that a multiplier was appropriate. (See *Ketchum, supra,* 24 Cal.4th at p. 1138 [courts are "not *required* to include a fee enhancement to the basic lodestar figure for contingent risk . . . although it retains discretion to do so in the appropriate case"]; Cal. Rules of Court, rule 8.204(a)(1)(C) [briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"]; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116 [appellate court may disregard any assertion that is unsupported by citations to the record].)

In any event, the record shows that a 1.5 positive multiplier for the work by the Evans Law Firm was built into the trial court's lodestar calculation. Appellants have not demonstrated that the trial court abused its discretion.

## DISPOSITION

The challenged attorney fees order is affirmed. Respondents are entitled to their costs on appeal. (Cal. Rules of Court, Rule 8.278(a)(2).)

15

_____
BURNS, J.

We concur:


_____
JACKSON, P.J.



_____
CHOU, J.



A166427