Filed 9/4/14  Save Our Neighborhood Group v. City of Lancaster CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| SAVE OUR NEIGHBORHOOD GROUP, | B242866 consolidated with B245047 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BS121501) |
| CITY OF LANCASTER et al., | |
| Defendants and Respondents; | |
| AV CALIFORNIA, LLC, | |
| Real Party in Interest and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ann I. Jones, Judge.  Affirmed in part and reversed in part.

Leibold McClendon & Mann and John G. McClendon for Plaintiff and Appellant.

Law Offices of Saul Reiss, Saul Reiss and Firouzeh Simab for Real Party in Interest and Appellant.

Stradling Yocca Carlson & Rauth, Allison E. Burns and Vanessa S. Locklin for Defendants and Respondents.

_____

INTRODUCTION

This appeal involves the award of attorneys' fees to Save Our Neighborhood Group (SONG). SONG is an organization formed to challenge the environmental review of a project to amend the City of Lancaster's (the City) general plan to change the zoning designation so that real party in interest, AV California, LLC (AV California), could construct a shopping center on a vacant lot in an area of the City zoned for residential use. After SONG prevailed in its appeal from the denial of its petition for writ of administrative mandate (Case No. B225087), it moved for attorneys' fees as a private attorney general (Code Civ. Proc., § 1021.5).[1] To protect taxpayer funds, the City entered into a settlement agreement with SONG to pay SONG $150,000 as attorneys' fees. The trial court granted SONG's attorney fee motion and, aware of the settlement agreement, ordered AV California to pay SONG $120,375 as AV California's share of the attorney fees. AV California appeals contending SONG did not satisfy the prerequisites of section 1021.5 and AV California should be excused from paying any attorney fees. SONG appeals contending the trial court erred in fixing the amount of the fee award. We affirm the trial court ruling that SONG was entitled to attorneys' fees under section 1021.5. However, we reverse that portion of the order setting the lodestar amount and denying SONG fees for hours spent working on a motion filed at the trial court's behest.

FACTUAL AND PROCEDURAL BACKGROUND

AV California sought to develop a shopping center in a unused lot in an area of the City that was zoned for residential use. To facilitate that project, AV California petitioned the City for, and obtained approvals and zoning changes and amendments to, the City's general plan. AV California then procured and supplied the final environmental impact report (FEIR) evaluating the zoning amendments. SONG filed a petition for writ of mandate that challenged the City's certification under the California

---

[1]  All further statutory references are to the Code of Civil Procedure, unless otherwise noted.

Environmental Quality Act (Pub. Resources Code, § 21000 et seq. (CEQA)) of the FEIR. AV California's counsel represented the City in opposing SONG's writ petition. The trial court denied the petition and SONG appealed.

We reversed the judgment denying SONG's writ petition on the ground that the FEIR failed to address housing density in violation of Government Code section 65583 and the FEIR's discussion of one of the project's alternatives was inadequate under CEQA. AV California's attorney again represented the City's interest on appeal; no appearance was made by the City. Following our remittitur, the trial court issued a peremptory writ of mandate directing the City to vacate its certification of the FEIR and approval of the general plan amendment, and to vacate its approvals of the shopping center project.

SONG then moved for $444,260 in attorneys' fees as a private attorney general under section 1021.5 (the fee motion). The City tendered the defense of the fee motion to AV California, who rejected the tender and indicated the property at issue was in bankruptcy and so it would oppose SONG's fee motion on its own behalf.

As AV California would not indemnify the City, and to avoid the cost and expense of litigation between it and SONG over fees, the City entered into a settlement with SONG (the settlement agreement). Under the settlement agreement, the City agreed to pay SONG $1,454.74 in costs plus $150,000 in attorneys' fees pursuant to section 1021.5 as "the total amount of costs and attorneys' fees that the City will be liable to pay . . . in connection with the Litigation." The settlement agreement further provided, if SONG obtained a fee award from AV California and actually collected all or some of that award, that SONG would retain the fee awarded as costs incurred in bringing the fee motion, plus one-half of the fees actually collected. SONG would refund to the City the other half of the collected attorney fee award.[2] The settlement agreement set forth three

---

[2] The relevant portion of the Settlement Agreement stated: "[i]n the event SONG obtains an award of its attorneys' fees under the *Fees Motion* and thereafter actually collects all or some of that award from [AV California], then SONG shall retain [¶] (A) that portion of the collected amount that is equal to the amount the court awarded

examples of how the allocation of attorneys' fees between the City and SONG would be calculated under the agreement. The City filed a notice of non-opposition to SONG's fee motion setting forth the pertinent terms of the settlement agreement, which agreement is also a public record (Gov. Code, § 6250 et seq.).

The trial court granted SONG's fee motion. It ruled that "AV California . . . is the proper party responsible for payment of [SONG's] total $134,375.00 award of attorneys' fees and is ordered to pay that amount to [SONG] without any contribution by [the City]." The court arrived at this amount after calculating the hourly lodestar rate at $350 for senior attorneys and $250 for junior attorneys. The court determined that SONG should not recover 33.6 hours it spent on a motion for reconsideration (§ 1008). SONG had brought the reconsideration motion at the trial court's request to demonstrate SONG had organizational standing under CEQA to bring its writ petition in the first instance. The court rejected AV California's request for an offset of the amount the City paid SONG under the settlement agreement. Both AV California and SONG appeal from the fee award. We consolidated the appeals. We will discuss additional facts in the discussion section.

CONTENTIONS

AV California contends (1) the trial court erred in finding SONG satisfied the prerequisites of the private attorney general statute (§ 1021.5); (2) AV California should not be obligated to pay SONG any attorneys' fees in light of the settlement agreement; (3) the settlement agreement should not be considered in evaluating the fee motion.

SONG contends the trial court erred in fixing the amount of attorneys' fees AV California must pay.

---

SONG for its costs and attorneys' fees incurred in bringing the *Fees Motion*, plus [¶] (B) one half of the balance of the collected amount and shall refund the remaining portion of the collected amount to the City."

4

DISCUSSION

1. *AV California has not demonstrated the trial court erred in ruling that SONG was entitled to attorneys' fees pursuant to section 1021.5.*

"To obtain attorney fees under section 1021.5,[3] the party seeking fees must show that the litigation: ' " ' "(1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) [was necessary and] imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter." [Citation.]' [Citation.]" ' [Citations.] Because the statute states the criteria in the conjunctive, each must be satisfied to justify a fee award. [Citation.] [¶] The decision whether to award attorney fees under section 1021.5 rests initially with the trial court. [Citation.] ' "[U]tilizing its traditional equitable discretion," that court "must realistically assess the litigation and determine, from a practical perspective" [citation] whether or not the statutory criteria have been met.' [Citations.]" (*RiverWatch v. County of San Diego Dept. of Environmental Health* (2009) 175 Cal.App.4th 768, 775-776 (*RiverWatch*).)

"On appeal, we review the trial court's decision for abuse of discretion. [Citation.] 'In reviewing the trial court's decision, we must pay " 'particular attention to the trial court's stated reasons in denying or awarding fees and [see] whether it applied the proper standards of law in reaching its decision.' " [Citation.]' [Citation.] We will not disturb the trial court's ruling absent a showing that there is no reasonable basis in the record for the award. [Citations.]" (*RiverWatch*, *supra*, 175 Cal.App.4th at p. 776.) We also recognize, however, "when, as here, the fee order under review was rendered by a judge

---

**3** Section 1021.5 reads in relevant part, "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

5

other than the trial judge, we may exercise ' "somewhat more latitude in determining whether there has been an abuse of discretion than would be true in the usual case." ' [Citation.]" (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 616 (*Biological Diversity*).)

In contending SONG is not entitled to attorneys' fees, AV California first argues that the trial court erred by finding that SONG's litigation provided a significant benefit to the general public or to a large class of people. AV California asserts that the litigation only benefitted SONG because the organization was formed solely to put a stop to the project "and that was the only goal that was achieved. No benefit was conferred on the general public." AV California presents an overly restricted account of the facts.

It has long been the law in California that "the effectuation of the strong state policy expressed in CEQA [is] an 'important right' within the meaning of section 1021.5." (*Schwartz v. City of Rosemead* (1984) 155 Cal.App.3d 547, 558, citing *Rich v. City of Benicia* (1979) 98 Cal.App.3d 428, 435 & *Friends of "B" Street v. City of Hayward* (1980) 106 Cal.App.3d 988, 993-994.) Likewise, the Legislature has declared the maintenance and protection of housing in California to be of the utmost import. "The Legislature finds and declares as follows: [¶] (a) The availability of housing is of *vital statewide importance*" (Gov. Code, § 65580, subd. (a), italics added), and "[t]he lack of housing . . . is a critical problem that threatens the economic, environmental, and social quality of life in California." (Gov. Code, § 65589.5, subd. (a)(1).)

SONG was organized for the purpose of challenging the City's certification of the FEIR and its approval of the amendment to the City's general plan to rezone the property at issue from residential to commercial. SONG succeeded in obtaining a writ of mandate that directed compliance with CEQA and with the Government Code's housing requirements, thus assuring a legally adequate analysis of housing density and of project alternatives to mitigate the project's impact on the environment. By securing compliance with CEQA and the Government Code's housing laws, SONG both protected important public rights and significantly benefitted all of the City's citizenry. We also agree with the trial court here that these non-pecuniary victories far outweigh and transcend any

6

financial interest SONG might have had in bringing this action. (§ 1021.5; *RiverWatch*, *supra*, 175 Cal.App.4th at pp. 775-776.)

In support of its argument that SONG's litigation "did not provide any benefit to anyone except their [*sic*] own client," AV California asserts that "the property was rezoned to commercial and the subject [*sic*] the general plan was amended only days after the action was instituted" and so this litigation achieved no useful result. The contention is unavailing. The record contains no evidence of the rezoning to which AV California refers. We noted that fact in our earlier opinion by stating that AV California "has not provided this court with a copy of the modification to the general plan addressed by the Resolution No. 09-52 and so we are unable to determine what the revised general plan does that is pertinent to this appeal." The same evidence was also absent from the record in connection with the fee-motion filing below and so the trial court properly rejected AV California's suggestion that the litigation was unnecessary.[4] Even were the relevant documents in the record and showed that the vacant residential property at issue in this lawsuit was rezoned to commercial immediately after SONG filed this action, we fail to see how that rezoning obviated any issue in this action. SONG's litigation remained

---

[4] On appeal, AV California requests that we take judicial notice of a ream of documents that make up the City's *Resolution No. 09-73*. We deferred ruling on the request for judicial notice and now deny it. Apart from the fact that the documents are illegible preventing us from deciphering how they relate to any issues in this appeal, Resolution No. 09-73 purportedly concerns an entirely different parcel of property than the one at issue in this litigation. AV California's subsequent attempt to correct that error by including documents supposedly related to *Resolution No. 09-52* is unavailing. "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) The only document from the relevant Resolution No. 09-52 that was actually before the trial court was the Resolution No. 09-52 itself, and there is nothing in the four corners of that resolution to indicate what it did that is pertinent to this appeal. Otherwise, AV California has suggested no exceptional circumstance to justify deviating from the longstanding rule recited in *Vons Companies* that we do not take judicial notice of evidence not presented to the trial court. (*Ibid.*)

7

necessary to assure proper environmental analysis of the project and compliance with the Government Code's housing density requirements. Our opinion caused the trial court to issue a peremptory writ of mandate that directed the City among other things, to vacate its approvals of the project and its approval of amendments to the general plan that included any rezoning of the property because of inadequate analysis. SONG's litigation caused these results benefitting the City at large.

Next, addressing the "necessity and financial burden of private enforcement" factor of section 1021.5, AV California argues that SONG's lawsuit was not a catalyst for any beneficial result in the underlying litigation, and SONG made no attempt to settle this lawsuit prior to filing its writ petition, with the result that SONG is not entitled to private attorney general fees. This contention is unavailing.

As our Supreme Court has made clear, "section 1021.5 does not require prelitigation settlement demands in noncatalyst cases" (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 257) and this is a noncatalyst case. Catalyst cases under section 1021.5 are those lawsuits in which litigation does not result in a judicial resolution but the defendant changes its behavior " 'substantially because of, and in the manner sought by, the litigation.' " (*Vasquez*, at p. 253.) The prelitigation settlement demand in catalyst cases is required because it is " 'fully consistent with the basic objectives behind section 1021.5 and with one of its explicit requirements -- the "necessity . . . of private enforcement" of the public interest' " (*Id.* at p. 254.) Here, however, the lawsuit proceeded to a final judgment on the merits, i.e., " 'a judicially recognized change in the legal relationship between the parties.' " (*Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 608; see *Vasquez*, *supra*, at p. 260.) Therefore, this is not a catalyst case in which a prelitigation settlement demand would be required.

Nonetheless, we observe that SONG *did notify* the City of its objections to the project both orally and by letter (Pub. Resources Code, § 21177, subds. (a) & (c)),[5] and

---

[5]     Public Resources Code section 21177 reads in relevant part, "(a) An action or proceeding shall not be brought pursuant to Section 21167 unless the alleged grounds for noncompliance with this division were presented to the public agency orally or in writing

8

there is an indication in the record that SONG contacted counsel for AV California at the commencement of the action, but that AV California's attorney responded that he " 'would try to make this action as costly for [SONG] as possible.' " Therefore, although this is not a catalyst case for which a settlement demand would be necessary, the record suggests that SONG did attempt to reach out to AV California, who preferred instead to litigate and run up SONG's attorneys' fees.[6]

Finally, citing *Concerned Citizens of La Habra v. City of La Habra* (2005) 131 Cal.App.4th 329 and *Ebbetts Pass Forest Watch v. Department of Forestry & Fire Protection* (2010) 187 Cal.App.4th 376, AV California argues that SONG is not entitled to attorneys' fees after achieving only partial success. In *Concerned Citizens*, the appellate court held the vindication of a single statutory violation while losing on five other causes of action was insufficient to be considered a substantial benefit to a large class of persons. (*Concerned Citizens*, at pp. 331, 335-336.) Likewise, the *Ebbetts Pass*

---

by any person during the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of the notice of determination. [¶] . . . [¶] (c) This section does not preclude any organization formed after the approval of a project from maintaining an action pursuant to Section 21167 if a member of that organization has complied with subdivisions (a) and (b). The grounds for noncompliance may have been presented directly by a member or by a member agreeing with or supporting the comments of another person."

Although there is no indication that SONG notified the Attorney General of the action within 10 days of its filing (§ 388, Pub. Resources Code, § 21167.7), those statutes do "not make such notification a prerequisite to recovering fees." (*Vasquez, supra*, 45 Cal.4th at p. 258.)

[6]       Notwithstanding this record, AV California nonetheless asserts that SONG did not bring any issues raised in its writ petition to the "City's attention at any time prior to instituting the instant action" but instead, SONG "ambush[ed] the City to run up a staggering amount of attorneys' fees . . . ." "In light of what we have already said, [namely that it was AV California's counsel who ran up the fees,] we need spend little time on this contention, which, if this were the Federal Circuit, would qualify for a 'chutzpah award.' [Citation.]" (*Thayer v. Wells Fargo Bank*. (2001) 92 Cal.App.4th 819, 845; see *Checkpoint Systems v. U.S. Intern. Trade Com'n* (Fed. Cir. 1995) 54 F.3d 756, 763, fn. 7 [noting "chutzpah" describes "the behavior of a person who kills his parents and pleads for the court's mercy on the ground of being an orphan"].)

court concluded the plaintiffs conferred no benefit whatsoever as they "did not have a factually meritorious lawsuit and, when the dust settled, their only victory was in a statement of law that when applied to the record clarified why they should lose." (*Ebbetts Pass*, at p. 388.) By contrast, here, SONG achieved a significant benefit for the citizens of the City by forcing the City to comply with California's well-established policy of assuring adequate housing, and to obey the important mandates of CEQA to protect the environment. For the foregoing reasons, the determination SONG was entitled to private attorney general fees under section 1021.5 was a proper exercise of the trial court's discretion.

2. *AV California may not shirk its responsibility for SONG's attorneys' fees.*

AV California posits numerous reasons why, even if SONG has satisfied the requisites of section 1021.5, AV California should not pay any attorneys' fees.

First, AV California argues, as the City paid SONG $150,000 under the settlement agreement and the trial court thereafter granted SONG's fee motion and fixed reasonable fees for the litigation at $120,375 (the award minus $14,000 for work on the fee motion), that SONG has already received full recompense and should be barred from pursuing recovery against AV California. AV California also argues that the fee award is invalid because excessive. Wrong.

Courts may, in exercise of their equitable powers, divide liability for the award of attorneys' fees between codefendants. (*Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 272; *Friends of the Trails v. Blasius* (2000) 78 Cal.App.4th 810, 838.) That is what the trial court did here, although it did not label its ruling as such. SONG requested a total of $444,260 in attorney fees. The court was well aware of the terms of the settlement agreement when it granted SONG's fee motion and fixed the amount of fees AV California only would be obligated to pay SONG.[7] The trial court explained: "[t]he express terms of the City's and SONG's settlement agreement regarding

---

[7] As the court was aware of the settlement agreement, that agreement was not "kept secret," contrary to AV California's insistence.

attorneys' fees left SONG free to pursue *remaining* claims under [section 1021.5] *for outstanding fees not recovered under the settlement agreement.*"  (Italics added.)  Hence, the $120,375 the court ordered AV California to pay SONG as attorneys' fees represented *AV California's obligation* for attorneys' fees *separate* from the amount the City agreed to pay SONG in the settlement agreement.

Given the court's order represents an allocation of the attorney fee obligation, AV California is not entitled to the offset it requested, namely to reduce its fee obligation ($120,375) by the amount of fees the City paid ($150,000).  AV California cites no authority for an offset where the fee award and the settlement represented two separate obligations allocated among the two responsible parties.  AV California's reliance on sections 877 and 877.6 is thus unavailing as those statutes concern offsets of damage obligations between joint tortfeasors.

Nor do we think the trial court's allocation of the fees was inequitable.  (*Sundance v. Municipal Court*, *supra*, 192 Cal.App.3d at p. 272.)  The record shows that AV California instigated the project that necessitated an amendment to the general plan to rezone the property at issue from residential to commercial.  AV California obtained the FEIR that was challenged in SONG's writ petition.  AV California's attorneys represented the City throughout the litigation, and made the strategic choice to " 'make this action as costly for [SONG] as possible.' "  Only when it became clear that SONG might be entitled to private attorney general fees, did AV California abandon the City's defense leaving the City on the hook for attorneys' fees AV California ran up. AV California should not be allowed to escape responsibility for the attorneys' fees merely because the City sought to limit its own exposure.  According to the math, the City's actual liability for attorneys' fees -- after SONG pays the City 50 percent of its actual recovery from AV California according to the Settlement Agreement -- will be somewhere between $150,000 and $89,812.50 ($150,000 - $60,187.50), which is at most, $30,562.50 less than AV California's obligation of $120,375.  This result is neither a disproportionate nor an unfair distribution of attorneys' fees between the City and AV California, given the record here.

11

AV California's entire challenge to the settlement agreement is premised on its view that somehow the amount of fees the trial court awarded SONG on the fee motion is the maximum amount to which SONG was entitled, and that SONG has already recovered more than that amount from the City. Accordingly, AV California argues that we should disapprove the settlement agreement because not only was it negotiated without AV California's participation, but thereunder, the City's $150,000 payment to SONG exceeded the trial court's $120,375 fee award and SONG was then permitted to seek even more funds from AV California to reimburse the City.

This argument overlooks the fact that the trial court was fully aware of the settlement agreement, and ignores statements the trial court made when it ruled that AV California was the proper party to pay the fees awarded SONG on the fee motion. The argument also discounts the fee motion's request for $444,262 in total. Thus, AV California's suggestion that SONG obtained more fees than the amount to which it was entitled, and its argument that the settlement agreement unfairly allows SONG to obtain attorney fees in excess of the trial court's award, are simply wrong. Moreover, AV California cites no authority for the proposition that it should be entitled to participate in the settlement between the City and SONG after refusing the City's tender of the defense to the fee motion and stating it would file its own opposition.

AV California also contends that it should not be liable for any of SONG's attorneys' fees because it "was *only* the real party in interest . . . . [who] was not responsible for the City's actions as set forth in the Court of Appeal's Decision that 'the City prejudicially abused its discretion by failing to proceed in a manner required by CEQA . . . .' " However, "a real party in interest in a mandamus proceeding . . . is regarded as a party to the litigation." (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 160.) Real parties who have "*a direct interest in the litigation, the furtherance of which was generally at least partly responsible for the policy or practice that gave rise to the litigation*" are properly held liable for fees under section 1021.5. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1181, italics added.) Here, AV California had a "direct interest in the litigation," which involved the approval of

12

zoning amendments solely to enable AV California to construct a shopping center on AV California's property that was zoned residential. The City was represented by AV California's counsel from the outset of this action, which counsel sought to run up the attorney fees as a method of forcing SONG to drop its legal challenge. Thus, AV California's practice gave rise not only to the lawsuit but also to any inflation in the cost of the litigation.

Next, AV California argues that the settlement agreement constitutes an unlawful sliding-scale or so-called "Mary Carter" agreement because it creates an obligation from AV California to the City "to funnel through SONG's attorney [fees] to the City." Citing *Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858 (*Abbott Ford*), AV California argues as a Mary Carter agreement, the settlement agreement "is against public policy."

The term "Mary Carter" agreement, derived from *Booth v. Mary Carter Paint Company* (Fla. 1967) 202 So.2d 8, is " 'used rather generally to apply to any agreement between the plaintiff and some (but less than all) defendants whereby the parties place limitations on the financial responsibility of the agreeing defendants, the amount of which is variable and usually in some inverse ratio to the amount of recovery which the plaintiff is able to make against the nonagreeing defendant or defendants.' [¶] Such agreements are also occasionally referred to by other terms. . . . [such] as a 'guaranteed *verdict* agreement.' [Citation.]" (*Abbott Ford*, *supra*, 43 Cal.3d at p. 869, fn. 9, italics added.)

Nothing in *Abbott Ford* suggests that it should be applied here to the settlement of an attorneys' fee obligation under section 1021.5, after judgment on the merits in a non-tort and non-contract case. *Abbott Ford* involved the validity of a sliding-scale settlement of liability for *damages* between the plaintiff and one of several defendants in a personal injury action. (*Abbott Ford*, *supra*, 43 Cal.3d at p. 863.) As in *Abbott Ford*, sliding-scale agreements in California are subject to a "good faith settlement" determination under sections 877 and 877.6. (See *Abbott Ford*, at p. 871.) Sections 877 and 877.6 apply to

*joint tortfeasors* or co-obligors on a contract debt. (§§ 877 & 877.6, subd. (a)(1).)[8] This is not a tort action or an action on a contract; the settlement agreement does not concern tort damages or a contract debt or analyze the relative culpability or liability of any party; and sections 877 and 877.6 do not apply here. Furthermore, contrary to AV California's insistence, even if the settlement agreement constitutes a Mary Carter agreement, it is not automatically invalid as against public policy; courts in California are cautious about declaring sliding-scale agreements valid or not. (*Abbott Ford*, at p. 871.) Finally, unlike Mary Carter agreements in which "the settling defendant's ultimate liability to the plaintiff is dependent, at least in part, on the amount of money which the plaintiff recovers from the nonsettling defendants . . . ." (*Id.* at p. 870), the settlement agreement here obligates the City to pay a portion of SONG's fees *irrespective of the outcome of SONG's fee motion.*

Nor has AV California demonstrated that this particular settlement agreement violated public policy. " '[I]t is established that fees [under the private attorney general doctrine], if recoverable at all—pursuant either to statute *or* [*the*] *parties' agreement* – are available for services at trial and on appeal.' " (*Mejia v. City of Los Angeles*, *supra*, 156 Cal.App.4th at p. 158.) Here, as the City observes, the settlement agreement serves two important public purposes: (1) it limits the exposure of the City's taxpayer funds in litigation necessitated by a private party who has indicated it is bankrupt, and (2) it forces SONG to pursue fees from the party here who instigated the project and later abandoned the City to pay for all of the attorney's fees. There is a strong public policy encouraging the settlement of controversies in preference to litigation. (*Salmon Protection & Watershed Network v. County of Marin* (2012) 205 Cal.App.4th 195, 201.) Given the City was faced with a fee motion of $444,260, its decision to settle and pay $150,000 was not unreasonable.

---

[8]     For this reason, AV California's reliance on 4 Moore and Thomas, California Civil Practice & Procedure (2008) section 27.42 pages 27-52 to 27-54, is entirely inapposite because that section relates to settlements under sections 877.6 and 1021.6 involving attorneys' fees for claims for implied indemnity in tort.

14

In sum, AV California has failed to demonstrate why the trial court's order was erroneous.**9**

3. *The trial court abused its discretion in fixing the amount of attorneys' fees awarded under section 1021.5.*

To determine the amount of reasonable attorney fees to be awarded SONG under section 1021.5, "the trial court begins by calculating the 'lodestar' amount. [Citations.] The 'lodestar' is 'the number of hours reasonably expended multiplied by the reasonable hourly rate.' [Citation.] To determine the reasonable hourly rate, the court looks to the 'hourly rate . . . prevailing in the community for similar work.' [Citation.] Using the lodestar as the basis for the attorney fees award 'anchors the trial court's analysis to an objective determination of the value of an attorney's services, ensuring that the amount awarded is not arbitrary. [Citation.].' [Citation.]" (*Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1393-1394.)

" '[W]ith respect to the *amount* of fees awarded, there is no question our review must be highly deferential to the views of the trial court.' [Citations.] 'An appellate court will interfere with the trial court's determination of the amount of reasonable attorney fees only where there has been a manifest abuse of discretion.' [Citations.]" (*Concepcion v. Amscan Holdings, Inc*. (2014) 223 Cal.App.4th 1309, 1319-1320.) However, although " ' "[t]he abuse of discretion standard is 'deferential,' . . . it 'is not empty.' [Citation.] '[I]t asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citations].' [Citation.]" ' [Citation.] When we are reviewing an award of attorney fees for appellate work, we need not accord the same degree of deference we would give to rulings that involve the trial court's firsthand knowledge. [Citation.] Further, when, as here, the fee order under review was rendered by a judge other than the trial judge, we may exercise ' "somewhat more latitude in determining whether there has been an abuse of discretion

---

**9**    We have considered and reject AV California's remaining arguments.

15

than would be true in the usual case." ' [Citation.]" (*Biological Diversity*, *supra*, 188 Cal.App.4th at pp. 615-616, fn. omitted.)

a. *The trial court exercised discretion when it based its fee award on SONG's entire fee request of $444,262.*

In its appeal, SONG first contends that the trial court applied the wrong legal standard. SONG reasons that rather than issuing a fee award solely against AV California for the total amount of fees to which SONG believed it was entitled ($444,262), the trial court based its award "on just the portion of fees the court was ordering [AV California] to pay." SONG argues the court should have decided the fee motion without reference to the settlement agreement, i.e., on the entire $444,262 SONG sought, and left the City and AV California to battle over apportionment. The court commenced its discussion entitled "Lodestar Calculation" by stating, "In the instant case, [SONG] seeks attorneys' fees in the total amount of $444,262.00." The court then proceeded to determine the amount of reasonable fees, knowing one of the two responsible parties had already committed to paying SONG $150,000. Thus, the court correctly commenced with the entire amount SONG sought and applied the lodestar calculus thereon.

b. *The trial court abused its discretion in calculating the lodestar.*

SONG persuasively argues that the trial court improperly calculated the lodestar by ignoring the unrebutted evidence in SONG's moving papers of prevailing rates and instead substituting a rate based on the law firm size. SONG's fee motion included declarations from two attorneys attesting that $550 per hour was a reasonable rate considering the expertise and caliber of SONG's attorney, McClendon. Also attached to the fee motion was a declaration from a member of SONG describing the difficulty in locating an attorney with expertise in CEQA and land use who would take the case on a contingency-fee basis. AV California appears not to dispute that SONG presented adequate evidence to support its fee motion.

Notwithstanding the fee motion's supporting documentation which was unrebutted, the trial court based the hourly rate on the law firm size. The trial court

16

stated during oral argument on the fee motion, "We look at every single aspect of this particular representation *and what kind of firm* and what type of firm you are, and what kind and type of firm was necessary and reasonable to litigate this case, and what hourly rate is charged by those types of firms. [¶] We don't – I don't give you Gibson, Dunn and Crutcher rates for this case, and we don't give you Mr. Cahill's rates for this case . . . when this cases [*sic*] doesn't reason [*sic*] those resources." (Italics added.) The court's ruling then reads, "This Court, as a CEQA designated-court and one which has significant experience with the rates charged in this community for similar work, finds that McClendon's proposed rate of $550 per hour is excessive. In this community, *small firms or sole practices routinely and regularly charge $350 per hour for a senior attorney and $250 per hour or less for associates, junior partners or non-lead counsel.* Accordingly, the Court, in its discretion, reduces McClendon's hourly rate to $350/hour and Winterswyk's hourly rate to $250/hour." (Italics added.) We agree with SONG that the court's "abuse of discretion here is readily apparent."

In *Biological Diversity*, *supra*, 188 Cal.App.4th 603, the trial court capped the hourly fees for all attorneys to $370, notwithstanding evidence that attorneys with comparable experience in environmental cases charged rates between $448 and $795, explaining " '[t]he court is familiar generally with the *local* prevailing rates and concludes the rate of $370.00 per hour is more in line for similar work in this community.' " (*Id*. at p. 615.) The appellate court held this rate limitation was an abuse of discretion because it ignored "undisputed evidence" and because " ' "[t]he reasonable market value of the attorney's services is the measure of a reasonable hourly rate." ' " (*Id.* at pp. 615 & 619.)

"We acknowledge the awarding of attorney fees is a highly fact-specific matter best left to the trial court's discretion [citation] and that the trial court has its own expertise in determining the value of legal services performed in a case. [Citation.] 'However, since determination of the lodestar figure[] is so "[f]undamental" to calculating the amount of the award, the exercise of that discretion must be based on the lodestar adjustment method.' [Citations.]" (*Graciano v. Robinson Ford Sales, Inc.*

17

(2006) 144 Cal.App.4th 140, 155-156.) Here, although the trial court indicated it was considering the relevant factors to determine the prevailing rate in the community for comparable professional legal services, i.e., services rendered by counsel with experience in CEQA and land use law, it arbitrarily relied on law firm size alone to calculate what it considered a reasonable rate. The court abused its discretion. This is not to say that the court was obligated to unquestioningly accept the $550 amount merely because SONG's declarations were undisputed. Rather, firm size is not properly the sole basis for fixing the rate.

Given we are reversing the order fixing the amount of fees, we need not address SONG's further argument that the court abused its discretion in denying its request for a multiplier.

c. *SONG should be compensated for the reasonable time spent working on the reconsideration motion.*

SONG contends that it should be awarded fees for its reconsideration motion. We agree. To bring its CEQA challenge, SONG was obligated to demonstrate at the outset of the action that it had standing. (Pub. Resources Code, § 21177.) It was unaware until the trial court issued its tentative ruling on SONG's writ petition that its declaration in support of standing was not included in the record and counsel for the City and AV California had not received copies. The trial court rejected SONG's request for permission to fax a copy of the declaration to the clerk, and instead required SONG to proceed by way of a motion for reconsideration (§ 1008). The trial court then denied SONG's ensuing motion. In reversing the trial court's denial of SONG's writ petition, we first held SONG indeed had standing. As for the attorney fee motion, the trial court declined to award SONG fees for 33.6 hours it claimed to have worked on the reconsideration motion. The court ruled the amount requested was "excessive and unnecessary" because in the court's view, SONG "could have easily and more efficiently proceeded to an appeal without resorting to a motion for reconsideration."

"[I]n the absence of 'circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably*

18

*spent . . . .* [Citation.]' [Citation.] However, '[a] fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.' [Citation.]" (*Bernardi v. County of Monterey*, *supra*, 167 Cal.App.4th at p. 1394.) "[T]he predicate of *any* attorney fee award, whether based on a percentage-of-the-benefit or a lodestar calculation, is the necessity and usefulness of the conduct for which compensation is sought." (*Thayer v. Wells Fargo Bank*, *supra*, 92 Cal.App.4th at p. 846.) The court's ruling here overlooks the fact that the very same court, albeit a different judge, had required SONG to proceed by way of a reconsideration motion to demonstrate its standing to bring this lawsuit in the first place, and that our review is restricted to those documents that were before the trial court. Consequently, counsel's work on the reconsideration motion cannot fairly be labeled "unnecessary." The fee award should include compensation for a reasonable number of hours spent on a motion the trial court required simply so that SONG could demonstrate its standing to bring its writ petition in the first instance.

DISPOSITION

The order is affirmed in part and reversed in part.  SONG shall recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.

We concur:


KLEIN, P. J.


KITCHING, J.

20