Filed 1/21/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| RENEE VINES,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>O'REILLY AUTO<br>ENTERPRISES, LLC,<br><br>  Defendant and<br>  Respondent. | B301000<br><br>(Los Angeles County<br>Super. Ct. No. PC058046) |

  APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Stephen P. Pfahler, Judge. Reversed and remanded.

  Mayall Hurley, William J. Gorham III and Nicholas F. Scardigli for Plaintiff and Appellant.

  Higgs Fletcher & Mack, John Morris, James M. Peterson, Derek W. Paradis and Rachel M. Garrard for Defendant and Respondent.

_____

Renee Vines sued his former employer O'Reilly Auto Enterprises, LLC for violations of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.),[1] alleging race- and age-based discrimination, harassment and retaliation-related claims. After a jury found in his favor and awarded damages on his claims for retaliation and failure to prevent retaliation, Vines moved for an award of $809,681.25 in attorney fees. The trial court awarded only $129,540.44 in fees, based in part on its determination the unsuccessful discrimination and harassment claims were not sufficiently related or factually intertwined with the successful retaliation claims. On appeal Vines contends that determination was based on a legal error and the court thus abused its discretion in reducing the fee award. We agree, reverse the postjudgment fee order and remand for the court to recalculate Vines's fee award.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Vines's Complaint*

On October 16, 2017 Vines filed a complaint against O'Reilly alleging he was a 59-year-old Black man who had been subjected during his employment with O'Reilly to discriminatory treatment and harassment by his supervisor Tim Fonder and others because of his age and race. For example, Fonder allegedly created false and misleading reviews of Vines, yelled at him and denied his requests for training given to younger, non-Black employees. Although Vines repeatedly complained to O'Reilly's management regarding the harassment and discrimination, O'Reilly took no remedial action. Instead, the

---

[1] Statutory references are to this code unless otherwise stated.

2

company began an investigation by John Larotonda, a district manager, that was pretextual and conducted to seek a reason for terminating Vines's employment. Larotonda recommended, and O'Reilly approved, Vines's termination in July 2017. Vines alleged six causes of action: two for discrimination (race and age); two for harassment (race and age); retaliation; and failure to prevent discrimination, harassment and retaliation.

### 2. *O'Reilly's Motion for Summary Judgment or, in the Alternative, Summary Adjudication*

On July 26, 2018 O'Reilly moved for summary judgment or, in the alternative, summary adjudication as to each of Vines's claims. The trial court denied O'Reilly's summary judgment motion, finding triable issues of material facts existed—including as to whether O'Reilly had been motivated by racial animus in taking disciplinary action against Vines and retaliated against Vines for his complaints—but granted summary adjudication of Vines's causes of action for age discrimination and age harassment, finding Vines had failed to present any evidence his age had anything to do with his termination or O'Reilly's alleged discrimination, harassment or retaliation.

### 3. *The Jury Trial*

The parties tried the remaining four causes of action before a jury for two weeks in April and May 2019. For Vines's retaliation claim the jury was instructed, in part: "Mr. Vines does not have to prove discrimination or harassment in order to be protected from retaliation. If he reasonably believed that O'Reilly's conduct was unlawful he may prevail on a retaliation claim even if he does not present, or prevail on, a separate claim for discrimination or harassment."

3

The jury returned its verdict on May 3, 2019, finding against Vines on his race discrimination (disparate treatment) and harassment claims: The jury found Vines's race was not a substantial motivating reason for O'Reilly's discharge or other adverse employment action and Vines was not subjected to unwanted harassing conduct because of his race. Vines, however, prevailed on his retaliation and failure to prevent retaliation claims. For his retaliation claim, as reflected on the special verdict form, the jury's findings included that Vines had "complain[ed] to a supervisor, human resources or the T.I.P.S. Hotline of what he reasonably believed to be race discrimination, race harassment, or unlawful retaliation."[2] The jury awarded Vines $70,200 in damages: $35,100 for economic loss and $35,100 for noneconomic loss. Although the jury also found Vines had proved by clear and convincing evidence that an officer, director or managing agent of O'Reilly acting on O'Reilly's behalf engaged in unlawful retaliation with malice, oppression or fraud, or that O'Reilly knew of that conduct and adopted or approved it after it occurred, the jury in a subsequent phase of the trial awarded Vines nothing as punitive damages. Judgment in Vines's favor was entered on July 2, 2019.

4. *Vines's Motion for Attorney Fees and O'Reilly's Opposition*

On July 16, 2019 Vines, pursuant to section 12965, moved for an award of $809,681.25 in attorney fees—a lodestar of

---

[2] Vines presented evidence at trial that O'Reilly provided a means for its employees to report complaints by calling its "T.I.P.S. Hotline," and Vines testified he had made 17 calls to the hotline or O'Reilly's corporate headquarters in Springfield, Missouri, as well as other complaints to O'Reilly.

$647,745 with a 1.25 multiplier. Vines's motion was supported by multiple attorney declarations, attorney billing records and other exhibits. One of his attorneys averred the matter included multiple rounds of written discovery with more than 1,000 documents produced; more than 10 depositions in several states and multiple cities; and the need to oppose a motion for summary judgment and/or summary adjudication and prepare for a 10-day jury trial. Vines argued a lodestar multiplier was justified because of the difficulty of the case, including the large number of Vines's complaints to O'Reilly; the skills displayed by his attorneys in overcoming that difficulty; and his attorneys' acceptance of the matter on a contingency basis.

Vines also argued a downward lodestar adjustment was not warranted because the retaliation and failure to prevent retaliation claims on which he prevailed were related to the unsuccessful unlawful discrimination and harassment claims. He further asserted he had obtained full, not limited, success, as shown, among other factors, by the verdict form's providing for a single award of damages regardless of the number of FEHA violations to be found by the jury.

In its opposition to Vines's attorney fee motion O'Reilly contended Vines was not the prevailing party for purposes of an award of attorney fees; but, even if he were, his fee request should be denied altogether because the amount of fees he requested was excessive given the nominal jury award and Vines's limited success: The jury had awarded Vines only $70,200 even though in his closing argument he had sought more

5

than $2.5 million in damages,[3] and Vines had prevailed on only two of his six causes of action.

O'Reilly argued in the alternative the fee amount should be substantially reduced because a court has discretion to limit fees for unsuccessful causes of action if they were not related to the successful causes of action or the plaintiff did not obtain substantial relief. O'Reilly asserted Vines's FEHA claims were not interrelated and, even if the trial court were to find otherwise, Vines had obtained only limited success in the litigation, not substantial relief or "excellent results," for the reasons O'Reilly had already stated in arguing for a denial of any fees. Vines's attorneys spent more than 75 percent of their time on Vines's race harassment and discrimination claims, O'Reilly contended, and his attorneys should not be compensated for time spent litigating the unsuccessful claims.

O'Reilly also argued the court should make additional reductions for certain unreasonable billing entries; the unreasonable hourly rates of Vines's attorneys; and Vines's unreasonable settlement stance.[4] O'Reilly further argued a

---

[3]     In support of O'Reilly's argument that Vines sought more than $2.5 million in damages, O'Reilly relied on Vines's economic expert's testimony (as characterized by O'Reilly's attorney Derek Paradis) that Vines had suffered $253,417 in economic losses and Vines's counsel's argument to the jury it should award emotional distress damages equal to five to nine times Vines's economic damages.

[4]     O'Reilly in opposition to Vines's fee motion provided a history of the parties' settlement offers. It argued the court should exercise its discretion not to award fees incurred after November 2018 when the parties' attorneys agreed to discuss

6

downward adjustment of the lodestar figure to 33 percent of the requested amount should be applied in part because Vines had prevailed only on one-third of his claims.

### 5. *The Hearing and Order on Vines's Fee Motion*

The trial court heard argument on September 9, 2019. Vines's attorney told the court he had always thought of the matter as primarily a retaliation case and the only reason the discrimination and harassment claims had been included was that the same evidence would have to be presented. He explained, "We would have had to go into those factual predicate evidence or the factual predicate that Mr. Vines had a reasonable belief for his claims of harassment and discrimination such that his complaints were protected conduct triggering a retaliation claim"; "[W]e can envision a trial where we only have the retaliation claim and we would still have had to present the same evidence of the underlying discrimination/harassment facts . . . so that we can show that he had a reasonable belief."

After taking the matter under submission, the trial court issued its order later that same day awarding Vines $129,540.44 in attorney fees. The court, finding Vines was the prevailing party because he had succeeded on his retaliation and failure to prevent retaliation causes of action, determined it accordingly had discretion to award Vines reasonable attorney fees. It also found Vines's fee request did not "appear unreasonably inflated" and thus declined to deny Vines's fee motion altogether.

with their clients a "possible" settlement of $200,000 and Vines's counsel later that month indicated the parties would not be able to agree. Vines in his reply in support of the motion pointed out O'Reilly never made a Code of Civil Procedure section 998 offer.

As for O'Reilly's contention Vines could only recover on his two successful retaliation-based claims, the court expressly determined Vines had "won substantial relief and obtained excellent results." The court, however, stated it "finds that the unsuccessful FEHA claims for discrimination and harassment are not sufficiently related or factually intertwined with the successful retaliation claims. As [O'Reilly] points out, any facts related to [Vines] being retaliated against arose after [he] complained about the discrimination and harassment conduct." Observing Vines sought fees for the entire lawsuit and finding 75 percent of attorney time was spent on the unsuccessful discrimination and harassment claims,[5] the court ruled Vines was not entitled to recover 75 percent of the fees for the entire action.

The court also agreed to reductions for certain fees O'Reilly had argued were not reasonably incurred; reduced the hourly rate for Vines's attorney Nicholas Scardigli; rejected O'Reilly's argument that Vines should not recover any fees incurred after O'Reilly's reasonable settlement offers;[6] and declined to give an

---

[5] In its order the trial court cited paragraph 6 of Paradis's declaration. In that declaration Paradis opined Vines's counsel spent more than 75 percent of his time on Vines's race harassment and discrimination claims. Paradis also averred nearly all written discovery questions and questions in each deposition by Vines's counsel focused on the alleged race harassment and discrimination and that "even at trial, this case was all about race."

[6] The trial court stated that, despite Vines's observation O'Reilly had not made a Code of Civil Procedure section 998 offer, a court had discretion to determine reasonably incurred fees

8

upward or downward multiplier to the lodestar figure. Taking Vines's requested lodestar amount of $647,745, the court subtracted $129,583.23, representing the amount of reductions for specific fees not reasonably incurred and for Scardigli's decreased hourly rate, resulting in a subtotal of $518,161.77, which the court then reduced by 75 percent to account for Vines's failure to recover on the unsuccessful claims. The court awarded Vines a total attorney fee amount of $129,540.44.

## DISCUSSION

### 1. *Governing Law and Standard of Review*

Section 12965 authorizes an award of attorney fees to the prevailing party in an action under FEHA: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party . . . reasonable attorney[ ] fees and costs."[7] Because fee awards to prevailing FEHA plaintiffs promote the important public policy in favor of eliminating discrimination in

---

using the same principle even in the absence of an offer under that statutory provision. Explaining it nevertheless declined to exercise that discretion, the court stated it did not categorically find all fees incurred after March 26, 2019—when O'Reilly had made a settlement offer for $125,000 that Vines rejected several days later—were unreasonably spent.

[7] In 2019, when Vines moved for attorney fees, the quoted statutory language was located in section 12965, former subdivision (b). Section 12965 was later amended effective January 1, 2020 with no change to that language. It was again amended effective January 1, 2022 with no change to the relevant language other than its relocation to new (current) subdivision (c)(6). (See Stats. 2018, ch. 955, § 5; Stats. 2019, ch. 709, § 2; Stats. 2021, ch. 278, § 7.)

the workplace (*Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1386-1387), a "'prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."'" (*Steele v. Jensen Instrument Co.* (1997) 59 Cal.App.4th 326, 331; accord, *Young v. Exxon Mobil Corp.* (2008) 168 Cal.App.4th 1467, 1474; see *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 975, 984-985 (*Chavez*).) "'A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.'" (*Chavez*, at p. 990.)

"In order to calculate an attorney fee award under the FEHA, courts generally use the well-established lodestar method. The lodestar amount is simply the product of the number of hours spent on the case, times an applicable hourly rate." (*Caldera v. Department of Corrections & Rehabilitation* (2020) 48 Cal.App.5th 601, 607; see, e.g., *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1249.) "'The trial court then has the discretion to increase or reduce the lodestar figure by applying a positive or negative "'multiplier'" based on a variety of factors.'" (*Taylor*, at p. 1249; see *Hensley v. Eckerhart* (1983) 461 U.S. 424, 434 [103 S.Ct. 1933] (*Hensley*) ["[t]he product of reasonable hours times a reasonable rate does not end the inquiry"; other considerations remain that may lead a court "to adjust the fee upward or downward, including the important factor of the 'results obtained'"].)[8]

---

[8] In interpreting and applying FEHA's attorney fee provisions, California courts have looked for guidance to federal decisions involving federal antidiscrimination laws, including federal laws for violation of civil rights. (See *Chavez, supra*, 47 Cal.4th at pp. 984-985, 989.)

"California law, like federal law, considers the extent of a plaintiff's success a crucial factor in determining the amount of a prevailing party's attorney fees." (*Environmental Protection Information Center v. Dept. of Forestry & Fire Prevention* (2010) 190 Cal.App.4th 217, 238, citing *Chavez*, *supra*, 47 Cal.4th at p. 989.) Where a prevailing plaintiff succeeded on only some claims, the court should make a two-part inquiry: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" (*Hensley*, *supra*, 461 U.S. at p. 434; see *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 413-418 & fn. 6 [discussing the "two-step analysis dictated by *Hensley*" and explaining courts have applied "the *Hensley* standards for determining appropriate apportionment in the context of an attorney fee award to a partially prevailing party" in FEHA cases]; cf. *Environmental Protection Information Center*, at pp. 238-239 [in determining availability of attorney fees, "California courts applying [Code of Civil Procedure section] 1021.5 in cases of limited success have adopted the approach set forth in *Hensley*," which "establishes a two-part inquiry"].)[9] If "a plaintiff . . . present[s] in one lawsuit distinctly different claims for relief that are based on different facts and legal theories," "counsel's work on one claim will be unrelated to his work on another claim"; "these unrelated claims [must] be treated as if they had been raised in separate lawsuits,

[9]    See *Chavez*, *supra*, 47 Cal.4th at page 985 ("'[i]n deciding whether to, and how to, award fees under [former] section 12965, subdivision (b), courts will look to the rules set forth in cases interpreting [Code of Civil Procedure] section 1021.5'").

11

and therefore no fee may be awarded for services on the unsuccessful claim." (*Hensley*, *supra*, 461 U.S. at pp. 434-435; see *Chavez*, at p. 989 ["California law is consistent with federal law" that, "[i]f a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims"].)

If, in contrast, a lawsuit consists of related claims, the attorney fee amount awarded for a plaintiff who has obtained "substantial relief" should not be reduced merely for the reason the plaintiff did not succeed on each contention raised. (*Hensley*, *supra*, 461 U.S. at p. 440.) Nevertheless, even though fees are not reduced simply because "a plaintiff prevails on only one of several factually related and closely intertwined claims," "'a reduced fee award is appropriate when a claimant achieves only limited success.'" (*Chavez*, *supra*, 47 Cal.4th at p. 989; see *Hensley*, at p. 436 [if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount," "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith"].) But "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." (*Hensley*, at p. 435.)

"[T]he 'burden is on the party seeking attorney fees to prove that the fees it seeks are reasonable.'" (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 615; accord, *Gonzalez v. Santa Clara County Dept. of Social Services* (2017) 9 Cal.App.5th 162, 169.) However, "'[i]n challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument

12

and citations to the evidence.  General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice.'" (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 488; see *Blum v. Stenson* (1984) 465 U.S. 886, 891-892 & fn. 5 [104 S.Ct. 1541] (*Blum*) [declining, in a case involving attorney fees in a federal civil rights action, on ground of forfeiture "to consider petitioner's further argument that the hours charged by respondent's counsel were unreasonable" where "petitioner failed to submit to the District Court any evidence challenging the accuracy and reasonableness of the hours charged" or "the facts asserted in the affidavits submitted by respondent's counsel"]; *United States v. $28,000.00 in United States Currency* (9th Cir. 2015) 802 F.3d 1100, 1105-1106 [relying in part on *Blum* in stating the fee "applicant has an initial burden of production" to "'produce satisfactory evidence' establishing the reasonableness of the requested fee"; "[a]fter a court determines that a fee application is supported with the requisite evidence of hours worked and the market legal rate" and then the "reasonableness of the fee sought," "if the fee target [the party opposing the fee request] does not dispute the market rate or hours reasonably expended, and poses no other valid legal reason for denying the fee request," the court's "inquiry should end after it determines whether the applicant's fee request is facially reasonable"]; *Straw v. Bowen* (9th Cir. 1989) 866 F.2d 1167, 1169 [the Supreme Court in *Blum* "places a rebuttal burden upon the party opposing the fee request"].)

We review an attorney fee award under FEHA for an abuse of discretion.  (See *Caldera v. Department of Corrections & Rehabilitation*, *supra*, 48 Cal.App.5th at p. 606; *Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1200.)  "However,

'[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review.  The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.'" (*Samsky v. State Farm Mutual Automobile Ins. Co.* (2019) 37 Cal.App.5th 517, 521; accord, *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712; see *Soni v. Wellmike Enterprise Co. Ltd.* (2014) 224 Cal.App.4th 1477, 1481; *Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378.)

2. *The Trial Court's Determination That Vines's Claims Were Not Sufficiently Related or Factually Intertwined Was Based on Legal Error*

Vines asserts the trial court's ruling his unsuccessful discrimination and harassment claims were not sufficiently related to or factually intertwined with his successful retaliation-based claims was predicated on a legal error and the court thus abused its discretion in reducing the amount awarded on this ground.  Specifically, he argues the trial court's ruling was based on a faulty temporal analysis that failed to recognize he had to present evidence of the conduct underlying his discrimination and harassment claims to prove the reasonableness of his belief that such conduct was unlawful, as required to succeed on his retaliation cause of action.[10]

_____

[10]    To support his argument the evidence for his discrimination and harassment claims completely overlapped with that for his retaliation claims, Vines noted O'Reilly in its statement of undisputed facts in support of its motion for

14

"The retaliation provision of FEHA forbids an employer 'to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under' FEHA." (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1192; see § 12940, subd. (h).) "[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanovitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) "It is well established that a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory, even when a court later determines the conduct was not actually prohibited by the FEHA." (*Id.* at p. 1043 [affirming the proposition, undisputed by L'Oreal, "that an employee's conduct may constitute protected activity for purposes of the antiretaliation provision of the FEHA . . . when the employee opposes conduct that the employee reasonably and in good faith believes to be discriminatory"]; see *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 474 ["[a]n employee is protected against retaliation if the employee reasonably and in good faith believed that what he or she was opposing constituted unlawful employer conduct"]; *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 477 ["the fundamental question posed by this case is the reasonableness of Flait's belief that he was opposing unlawful harassment"].) "'[A]

---

summary judgment or summary adjudication had identified the same 117, and no other, facts as "undisputed material facts" to prove its contention each of Vines's causes of action lacked merit.

plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented.'" (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 381-382.)

We agree the trial court abused its discretion in determining Vines's reasonable attorney fees. The trial court stated it found the claims were not sufficiently related or factually intertwined because "any facts related to [Vines] being retaliated against arose after [he] complained about the discrimination and harassment conduct." That statement reflects a legal error. Evidence of the facts regarding the alleged underlying discriminatory and harassing conduct about which Vines had complained was relevant to establish, for the retaliation cause of action, the reasonableness of his belief that conduct was unlawful. (See *Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1535 ["[e]vidence of Hickman's conduct was probative as to whether Lewis engaged in protected activity, because it was relevant to whether Lewis reasonably believed the conduct he opposed was discriminatory"].) Indeed, as Division Six of this court has observed, "'"[E]mployment discrimination cases, by their very nature, involve several causes of action arising from the same set of facts."'" (*Taylor v. Nabors Drilling USA, LP, supra*, 222 Cal.App.4th at p. 1251.)

O'Reilly argues the trial court's exercise of discretion in declining to award all of Vines's requested attorney fees should nonetheless be affirmed because O'Reilly had defeated Vines's age-based discrimination and harassment claims with its motion for summary adjudication; Vines lost at trial on his race-based

16

discrimination and harassment claims; the jury awarded Vines only $70,000 on his retaliation claims, which was only 3 percent of the amount Vines had sought; and the jury declined to award punitive damages. O'Reilly, however, ignores that the trial court expressly ruled Vines had "won substantial relief and obtained excellent results" and, aside from the reductions for specific fees not reasonably incurred, had reduced the attorney fees amount because it had found Vines's claims were not sufficiently related or factually intertwined. (See, e.g., *Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 512 ["where, as here, the court expressly states a legally erroneous ground for its ruling, we cannot infer its exercise of discretion rested on a wholly different basis"]; *McKenzie v. Ford Motor Co.* (2015) 238 Cal.App.4th 695, 705 ["[w]hen the court states its reasons explicitly [for reducing the fees requested], we cannot infer its exercise of discretion rested on a wholly different basis"].)

O'Reilly asserts the trial court's determination Vines's unsuccessful claims were not closely related to his successful claims was a factual finding supported by substantial evidence. It contends Vines's discrimination and harassment claims involved different facts—including different actors, locations, documents and motives—from his retaliation claims. O'Reilly argues the age-based claims had no relationship to the retaliation claims tried to the jury. For Vines's race-based claims, it asserts the alleged discrimination and harassment involved the conduct and comments of Fonder and certain of Vines's coworkers on-site at O'Reilly's Santa Clarita store, while Vines's retaliation claims involved the conduct of O'Reilly's management personnel, including Larotonda, none of whom participated in any underlying discrimination or harassment and whose sole

17

involvement was in reviewing off-site Vines's personnel file to determine whether termination of Vines's employment complied with O'Reilly's policies.

The trial court's stated reason for its ruling regarding the insufficient relatedness of the claims, however, was not on the ground the age-based claims had no relationship to the retaliation-based claims. And the determination whether any facts related to Vines's retaliation claim arose after he had complained about the discriminatory and harassing conduct, which was the basis for the court's ruling Vines's claims were not factually intertwined, entailed a legal conclusion: Whether evidence supports one claim but not another is not a historical fact. Because, as discussed, evidence of the facts regarding the conduct about which Vines complained was probative as to whether he reasonably believed it constituted unlawful discrimination and harassment, the court erred in determining any facts related to the retaliation claim arose after he had complained about that conduct.

O'Reilly's reliance on *Chavez*, *supra*, 47 Cal.4th 970 to argue otherwise is misguided. In *Chavez* the Supreme Court held that Code of Civil Procedure section 1033, subdivision (a), which "grants the trial court discretion to deny costs to a plaintiff who recovers damages that could have been recovered in a limited civil case," applies to actions brought under FEHA. (*Chavez*, at p. 989.) After determining the court of appeal had erred in concluding otherwise to reverse the trial court's denial of a prevailing plaintiff's motion for attorney fees in a FEHA action, the Supreme Court next considered whether the trial court had abused its discretion in denying attorney fees to the plaintiff. In concluding there had been no abuse of discretion, the Court

stated, "[T]he extent of plaintiff's success was modest at best." (*Id*. at pp. 989-990.)

The *Chavez* Court explained its determination the plaintiff had achieved, at best, only modest success: The plaintiff had sought attorney fees for 1,851.43 total attorney hours during a period in which plaintiff's attorney had brought and litigated two state court actions and one federal court action, including an appeal to the Ninth Circuit; plaintiff had asserted in those actions claims of employment discrimination, harassment and retaliation in violation of FEHA, as well as civil rights violations under sections 1983 and 1988 of title 42 of the United States Code, nuisance, trespass, inverse condemnation, invasion of privacy and loss of consortium; the plaintiff, who had been hired as a police officer, had based his claims on several employment actions, including a five-day suspension for an April 14, 1999 incident at a laundromat, his assignment to administrative duties after an extended stress leave, remarks of supervisors and coworkers, alleged helicopter flights over his house, and the temporary rescission of an order granting his request for a transfer; and (as indicated by the jury's special verdicts) the only claim on which the plaintiff recovered damages was his retaliation claim predicated on the temporary rescission of the transfer order. (See *Chavez*, *supra*, 47 Cal.4th at pp. 977-980, 990.)

After noting the plaintiff did not contend his success on the single FEHA retaliation claim had any broad public impact or resulted in significant benefit to others, the *Chavez* Court stated, "Because this single successful claim apparently was not closely related to or factually intertwined with plaintiff's many unsuccessful claims, the trial court reasonably could and

19

presumably did conclude that plaintiff was not entitled to attorney fees for time spent litigating those unsuccessful claims." (*Chavez*, *supra*, 47 Cal.4th at p. 990.) O'Reilly relies on that statement to argue that the Court rejected the proposition FEHA retaliation claims are, by necessity, intertwined with the underlying discrimination claims. But the *Chavez* Court did not specifically address that proposition (nor does the opinion indicate the parties even raised it as an issue on appeal), as indicated, for example, by the Court's use of the term "apparently" when referring to the lack of relatedness of the plaintiff's multiple claims, which included many non-FEHA claims. (See, e.g., *California Building Industry Assn. v. State Water Resources Bd.* (2018) 4 Cal.5th 1032, 1043 ["[i]t is axiomatic that cases are not authority for propositions that are not considered"].) More to the point, our reversal of the trial court's order in this case is not based on a determination that retaliation claims in all circumstances must be found to be closely intertwined with the underlying discrimination claims for purposes of assessing reasonableness of attorney fees. Rather, the trial court's error here was basing its finding on an incorrect determination any facts related to Vines's retaliation claim arose after he had complained about the unlawful conduct.

O'Reilly's contention it had never disputed that Vines believed O'Reilly discriminated against him misapprehends the import of Vines's burden of proof at trial. Vines had to prove his beliefs were reasonable, which O'Reilly did contest, for his complaints to qualify as protected activity required for a FEHA retaliation claim. As Vines points out, O'Reilly's counsel in his closing argument reviewed the questions on the verdict form and told the jury, "Now, let me talk about this third claim for

20

retaliation. . . . First question, 'Did Mr. Vines complain to a supervisor, human resources or the T.I.P.S. Hotline of what he reasonably believed to be race discrimination, race harassment, or unlawful retaliation?' The answer to that is no. The closest he came was his conclusory statement . . . back in 2016 when he said, 'Hey, they're being disrespectful to me. It must be because I'm Black.' But when he was asked for specifics to support that, he didn't have any. And even as we've gone on here today, there isn't any."

Similarly, in its trial brief O'Reilly argued, although Vines may prevail on a retaliation claim if he reasonably believed O'Reilly's conduct was unlawful, "a false report of discrimination or harassment may lawfully be a basis for discipline and may not be considered as protected activity necessary to support a retaliation cause of action." Perhaps most importantly, in that same trial brief O'Reilly stated the parties had not stipulated to any of the ultimate facts or issues in the case; and it listed only three "ultimate facts" to which it would stipulate: (1) that O'Reilly was an employer; (2) that Vines was an employee of O'Reilly; and (3) that O'Reilly discharged Vines. Thus, even if O'Reilly had not expressly challenged the reasonableness of Vines's belief the conduct of which he complained was discriminatory or otherwise unlawful, because O'Reilly did not stipulate to that fact, Vines had to present evidence proving the reasonableness of that belief to succeed on his retaliation cause of action, such as evidence Fonder spoke to White males differently than to Vines (whom, according to Vines's testimony, Fonder "talked down to . . . like an animal") and mistreated other Black employees and witness testimony of an incident in which four O'Reilly store managers, wearing white pillowcases over their

21

heads, had knocked on a Black O'Reilly manager's hotel room door.

In sum, the trial court erred in reducing by 75 percent the $518,161.77 subtotal (which, as discussed, represented Vines's requested lodestar amount after reductions for specific billing entries) based on its conclusion that Vines's unsuccessful discrimination and harassment claims were not sufficiently related to or factually intertwined with his successful retaliation-based claims.

### 3. *Vines Forfeited His Challenge to the Trial Court's Reductions for Specific Billing Entries*

Vines contends the trial court also abused its discretion in reducing fees for specific billing entries that O'Reilly had contended were unreasonable, such as reducing by two-thirds the amount of fees for the depositions of three witnesses in Missouri, not awarding certain fees for attorney travel, reducing Scardigli's hourly rate (from $525 to $425), reducing the hourly rate for fees for certain "lower-level" work and not awarding fees for participation in an Employment Development Department hearing. By asserting in his opening appellate brief in a wholly conclusory manner, without citation to any legal authority, that each of the reductions should be remanded for recalculation because the trial court's decision to reduce fees for those entries was "tainted" by its decision not to award fees for his harassment and discrimination claims, Vines forfeited his challenge to those reductions. (*Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733, 786 ["issues not addressed as error in a party's opening brief with legal analysis and citation to authority are forfeited"]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["[a]n appellant must provide an

22

argument and legal authority to support his contentions"; "[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; see *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [appellate court's review limited to issues that have been adequately raised and supported in appellant's brief].)  Although in his reply brief Vines asserts the trial court's reason for reducing Scardigli's hourly rate—Scardigli requested the same hourly rate as attorneys with 20 more years of employment litigation experience—was insufficient to warrant the reduction, this additional argument was made too late to be considered.  (See, e.g., *McCann v. City of San Diego* (2021) 70 Cal.App.5th 51, 82, fn. 17 ["we need not address claims not properly addressed in the opening brief"]; *In re Marriage of LaMoure* (2011) 198 Cal.App.4th 807, 817 [appellant forfeited argument mentioned in reply brief but not raised in opening brief]; *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 ["an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"].)  Because Vines forfeited the issue, the trial court's reductions (to Vines's requested lodestar amount of $647,745) in the amount of $129,583.23 for specific billing entries—which were subtracted before the court applied the erroneous additional 75 percent reduction—remain undisturbed on remand.

## DISPOSITION

The postjudgment order awarding attorney fees is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.  Vines is to recover his costs on appeal.


PERLUSS, P. J.


We concur:



SEGAL, J.



FEUER, J.